---

(18 App. Div. 194.)

### In re DALY.

(Supreme Court, Appellate Division, Second Department. June 8, 1897.)

1. EMINENT DOMAIN—PROCEEDINGS BY COMMISSIONERS OF APPRAISAL.
   Laws 1893, c. 189 (relating to the sanitary protection of the water supply of New York City), § 12, provides that the commissioners of appraisal shall view the property, and hear the proofs and allegations of persons interested, and shall reduce the testimony, "if any," taken before them, to writing. Section 22 provides that an appeal from the award "shall be heard upon the evidence taken before said commissioners, and any affidavit as to irregularities." *Held*, that such statute does not change the general rule in condemnation proceedings that the commissioners of appraisal may act on their own judgment and information obtained from a view of the premises, as well as from evidence produced before them.

2. SAME—VALUE OF LAND—USE FOR PARTICULAR PURPOSES.
   Compensation cannot be awarded on the basis that the land taken may be used for a particular purpose, unless it is shown that it is marketable for such purpose.

3. SAME—PROOF OF VALUE.
   The value as building lots of farm land which had been divided into such lots is not established merely by the sale of a few of the lots, effected by exceptional means.

Appeal from award of commissioners of appraisal.

Application and petition by Michael T. Daly, as commissioner of public works of the city of New York, for and on behalf of the mayor, aldermen, and commonalty of the city of New York, under Laws 1893, c. 189, to acquire certain real estate, as the term "real estate" is defined in said act, for the purpose of providing for the sanitary

45 N.Y.S.—50

protection of the sources of the water supply of the city of New York. From the award of the commissioners, William R. Smith and others, landowners, appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Oliver P. Buel and D. B. Toucey, for appellants.

Henry T. Dykman, for respondent.

CULLEN, J. This is a proceeding initiated under chapter 189 of the Laws of 1893, entitled "An act to provide for the sanitary protection of the sources of the water supply of the city of New York," to condemn lands contiguous to the Kensico Reservoir. While this court has the power to reverse or set aside the award of commissioners appointed under this statute, we are clear that that power is to be exercised only in the same manner, and subject to the same rules, as awards of other commissioners of appraisal are reviewed. The provision of section 22 of the act that "such appeal shall be heard upon the evidence taken before said commissioners and any affidavit as to irregularities" was not intended to prescribe any different rule of conduct for commissioners under this statute than that followed by commissioners of appraisal generally, or to change the function that such commissioners discharge. By section 12 of the act it is directed that the commissioners shall view the real estate laid down on the maps, and hear the proofs and allegations of any persons interested, and shall reduce the testimony, "if any," taken before them, to writing. These provisions are substantially the same as those of the general railroad act of 1850, of the condemnation law in the Code of Civil Procedure, and of chapter 490 of the Laws of 1883 (the act providing for the increase of the water supply of New York City). It has been settled by an unbroken line of authority that commissioners of appraisal are to act on their own judgment and information obtained from their view of the real estate, as well as on the evidence produced before them. This was so held in Re Thompson, 121 N. Y. 277, 24 N. E. 472, which arose under the statute of 1883, already referred to. The statute evidently contemplates that in the case of some claims no testimony may be given, and the determination of the commissioners be based solely on their own knowledge and information.

In Railroad Co. v. Lee, 13 Barb. 169, it was said:

"Unlike a jury, they are restricted to no peculiar species of evidence or any peculiar sources of information. They may collect information in all the ways which a prudent man usually takes to satisfy his own mind concerning matters of the like kind, where his own interests are involved in the inquiry. They may seek light from other minds, that they may be the better able to arrive at just conclusions, but, at the last, they must be governed by their own judgment."

It follows that an award of commissioners cannot be subjected to such a review as would obtain in the case of an appeal in an ordinary action. So it was held by the late general term of this department. "It is settled by authority that an award by commissioners will not be set aside for inadequacy or because excessive, unless the award

is palpably wrong in either respect" (In re Brooklyn El. R. Co., 87 Hun, 88, 33 N. Y. Supp. 881); or, as has been otherwise stated, unless the award shocks our sense of justice. Nor will it be set aside for mere errors in the receipt or exclusion of evidence. To justify the reversal of an award for error of law, it must be made to appear that the commissioners adopted an erroneous principle in estimating the compensation. In re South Seventh Street, 48 Barb. 16; In re Gilroy, 78 Hun, 260, 28 N. Y. Supp. 910.

Tested by these rules, we think the award of the commissioners should stand. The property acquired from the appellants adjoins Kensico Lake or Reservoir. It was purchased by the appellant Smith in the year 1890. The land was taken from him in 1893. The entire purchase of Smith, which consisted of several tracts bought from different owners, contained about 170 acres, and was obtained for about $25,000. A great part of the land seems to be of a rough character, being rocky and with very sharp declivities. Smith acquired the property for the purpose of dividing it up into building plots, and marketing it in that shape. The evidence shows that he has marketed a number of lots. These have been sold on the installment plan, and in many cases but a small part of the purchase money has been paid, and no deeds as yet given. No substantial expenditures seem to have been made on the property for the purpose of preparing it for building sites, and but two structures have been built. The most that seems to have been done in this direction has been the preparation of maps, and the division on the maps of the tracts into lots, and in advertising. The evidence of the landowner showed sales of these lots at prices ranging from $50 to $300, and expert evidence was introduced to the effect that such was their market value. On behalf of the city, a number of real-estate agents familiar with the value of land in the vicinity, and cognizant of the sales in that locality, testified that the land was worth from $100 to $500 an acre. The first plot taken by the city contained 12¼ acres, and for this the commissioners awarded $17,680. The second plot contained 12½ acres, and for this the commissioners awarded $9,000; being at the rate of nearly $1,500 an acre for the first piece, and nearly $750 an acre for the second piece. The amount claimed by the landowner for the two pieces and for the injury to a quarry on one exceeds $150,000.

It will thus be seen that there is the greatest discrepancy in the opinions of the witnesses as to the value of this property, and also between the amount awarded by the commissioners and that claimed by the landowners. Here, also, the appellants claim that the commissioners erred, in principle, in permitting evidence to be given of the value of the property by the acre. It is doubtless true, and settled by authority, that the landowner is not limited in compensation to the use which he makes of his property, but is entitled to receive its greatest value for any purpose. But, still, it is the market value of the property that is the measure of compensation. When, therefore, it is sought to show that a tract of land has a use for a particular purpose, it must also be shown that it is marketable for that purpose, or has an intrinsic value. If on a farm there

was a quarry or deposit of ore, the owner would not be limited to the value of the land as a farm, but would be entitled to compensation for the quarry or mine, if they enhanced the value of the land. But though the stone of the quarry was good or the ore rich, if the location of the land was such, either from lack of transportation facilities or for other reasons, as to render the quarry or deposit of no practical advantage or value, then he would be confined to the value of his land for farming purposes. So in this case, as to villa sites. Nearly any tract of land or any farm can be cut up into lots or villa sites. The question is not whether it can be so subdivided, but whether purchasers for the lots can be found, and also how speedily found; for if only small parts can be sold at intervals, and a number of years must elapse before the whole property can be disposed of, it is apparent that it would be unfair to take as the present value of the property a sum only to be realized after a long lapse of time. The evidence in this case shows that purchasers had been secured by exceptional means,—extraordinary commissions given to brokers, excursions, and the like. Practically, no settlement has been established at the place. Nearly every one familiar with the territory around New York has witnessed the sites of villages and towns laid out on farms or at times in the woods, with nothing on the ground to denote the existence of village or town save boards showing the names of untraveled avenues. Lots are at times sold on such tracts by exceptional means. I do not deny that, if a whole tract could be sold off in such lots, the prices so obtained would be the measure of its value, whether the scheme was wise or foolish. But, until it was plainly shown that purchasers could be found for the whole tract, it would be unreasonable to estimate its aggregate value from the sale price of a few lots, oftentimes sold nominally or really at a higher price for a lot than the adjacent land would bring for the acre. Here it was shown that farms adjacent to the tract of Mr. Smith, equally or more eligible, and equally capable of subdivision into villa plots, had sold for $300 an acre, and could still be purchased at that price. It was therefore a question of fact to be determined by the commissioners, by the exercise of their own judgment and experience, and in the light of the evidence, whether the land sought to be acquired was really salable and marketable as villa property or not, and what was the real price or sum that its owner could obtain for it. We cannot say that this award is palpably unjust. On the contrary, we are inclined to think it is fair. The landowner paid about $150 an acre for the land three years before it was taken from him. For one-half of what is taken, he is now awarded nearly $1,500 an acre, and for the other half $750 an acre. There appears to be no substantial change in the surroundings of the property, or the means of access to it; nothing that would create a greater enhancement in its value than that allowed by the award of the commissioners.

The award and report of the commissioners should be affirmed, with $10 costs and disbursements. All concur.