# Cases

# SECOND DEPARTMENT

IN THE

## APPELLATE DIVISION,

### May, 1902.

---

In the Matter of the Application and Petition of MICHAEL T. DALY, as Commissioner of Public Works of the City of New York, Respondent, for and on Behalf of the Mayor, Aldermen and Commonalty of the City of New York, under Chapter 189 of the Laws of 1893, to Acquire Certain Real Estate, as the Term "Real Estate" is Defined in Said Act, for the Purpose of Providing for the Sanitary Protection of the Sources of the Water Supply of the City of New York. (Carmel, Lake Gleneida.)

GEORGE R. COLE and Others, Appellants.

*Condemnation of a mill right for a city water supply — its value as a water power may be shown — its value for storage purposes or to the city may not.*

In a proceeding by the city of New York to acquire the right of a person entitled to use, for mill purposes, the outlet of a lake, desired by the city for the protection of its water supply, evidence of the value of the defendant's right with reference to the utility of the lake as a water power is competent, but evidence as to the value of such right with reference to the utility of the lake for storage purposes or as to the value of the water of the lake to the city is incompetent.

APPEALS by the claimants, George R. Cole and others, from an order of the Supreme Court, made at Dutchess County Special Term and entered in the office of the clerk of the county of Putnam on the 9th day of June, 1900, reversing and setting aside the fourth separate report of the commissioners of appraisal herein in certain respects.

*Isaac N. Mills*, for the appellants Cole.

*Abram J. Miller*, for the appellant Miller.

*Clayton Ryder*, for the appellants, the trustees of Drew Seminary.

*H. T. Dykman*, for the respondent.

PER CURIAM :

Upon carefully considering this case a second time, after the reargument which has been had, we are not prepared to say that the learned judge at Special Term erred in setting aside the report of the commissioners herein, so far as it affects the property of the appellants Cole.

The principal portion of the award, amounting to $36,990, was directed to be paid to the owners of what is known as the Coles Parcel, No. 64, " for the rights of milling, all rights of pondage and all rights to raise and lower the waters of Lake Gleneida."

Two kinds of evidence were received by the commissioners in regard to the value of the rights thus taken : (1) Evidence of its value as a water power ; and (2) evidence of its value for the purposes of a storage reservoir.

The first class of evidence was properly received. (*City of Syracuse* v. *Stacey*, 169 N. Y. 231.) The case cited, however, is an authority adverse to the competency of the second class of evidence. We think it is clear that the commissioners erred in taking into consideration the value of the Cole right with reference to its utility for storage purposes ; and there was so much proof of this sort that we are strongly inclined to think that it must have influenced them in fixing the amount of damages.

It is also to be observed that evidence was erroneously admitted as to the value of the water of Lake Gleneida to the city of New York. This proof is not sanctioned, as seems to have been supposed, by the decision of the General Term of this department in *Matter of Gilroy* (85 Hun, 424). It was there held that while in such cases as this the commissioners should take into consideration the availability of the property for use in connection with the water supply of New York city, the value of the particular property *to the city*, in view of its necessities, was not a legal measure of dam-

ages. In other words, it was declared to be proper to consider, as an element in the market value of the property to be taken, the existence of a demand for such property on the part of the city; but this did not authorize an inquiry as to what that particular property was worth to the city.

In a case of this kind, which relates to the rights of persons entitled to use the outlet of a lake for mill purposes, the information acquired by the commissioners in viewing the property to be taken is not of the same character or value as that obtained where the property viewed is merely a piece of land and includes no intangible rights. Here the view is manifestly less helpful, and more depends upon the character and weight of the expert evidence which is laid before the commissioners. Hence, the reception of incompetent evidence is more serious, for it is more likely to lead to an erroneous conclusion.

On the whole, we are convinced that the Cole award would not have been as large as it is if the commissioners had not adopted an erroneous rule as to the measure of damages.

As to the awards to the Drew Seminary and Henry F. Miller, however, the record discloses no sufficient reason for setting them aside, and we think they should have been allowed to stand.

The order appealed from should be modified so as to confirm the awards of the commissioners to the Drew Seminary and Henry F. Miller, including costs and counsel fees, and as thus modified affirmed.

All concurred; Goodrich, P. J., concurring in result.

Goodrich, P. J. (concurring):

Before the reargument of this appeal I had written my opinion, in which I arrived at the same result as that reached by my associates in the *per curiam* opinion, but for sufficient and other reasons than those set out therein; I deem it proper that these views should be expressed in a separate opinion.

The proceeding was instituted under chapter 189 of the Laws of 1893, entitled "An act to provide for the sanitary protection of the sources of the water supply of the city of New York." The petition, which was filed in 1893, alleges that the city is constructing a reservoir in the town of Carmel, known as Reservoir D, and that it

is necessary to acquire certain real estate (as the term, "real estate," is used in said act) "for the purpose of providing for the sanitary protection of the water supply of the city of New York."

The act, section 2, defines the term "real estate" as used in the act, to "signify and embrace all lands, including lands under water, tenements and hereditaments, corporeal and incorporeal, and the term 'interest therein,' when herein used in reference to real estate, shall be construed to signify and embrace any estate, right, title or interest, whether legal or equitable, in lands or water, any privilege or easement in or thereto appertaining, terms for years, incumbrances or liens thereon, whether by way of judgment, mortgage or otherwise, and also all claims for damages to such real estate."

The real estate described in the petition as shown by it and by the map annexed to the petition comprises all the lands bordering Lake Gleneida in numbered parcels.

Parcel 63 is "The bed of the lake with its waters, that is, with the property rights in the waters."

Parcel 64 is "All rights of milling, all rights of pondage and all rights to raise and lower the waters of Lake Gleneida, Town of Carmel, County of Putnam, are intended to be included in this parcel."

Parcel 45 is a small lot on the easterly side of the lake, on which were the well and pipe works for supplying the Drew Seminary and Female College.

The petition prayed the appointment of three commissioners to "ascertain and determine the compensation to be made to the owners of and all persons interested in the real estate," etc. The Coles filed their claim "as owners of Parcels Nos. 63 and 64, as designated on the map and petition filed in this proceeding, said premises consisting of the lake known as Lake Gleneida, its waters and all outflow therefrom, claim compensation for the said property taken, and for all rights of milling, all rights of ponding and all rights of raising and lowering the waters of said lake, and for the mill privilege and water rights in said lake on the uplands surrounding said lake as far as the outlet thereof heretofore conveyed by the owners of said privilege and water rights to Josephus Tillott and also to Daniel H. Cole, and all other water rights connected with

said lake and for the detriment or damage to the mill, mill seat and pond of claimants by reason of taking from them the waters flowing through said outlet," etc.

Commissioners were appointed, who reported in favor of paying $36,990 to the Coles for parcel 64, and $6,500 to the Drew Seminary for parcel 45. There were two awards of $500 each to Henry F. Miller for " pipe line easements." Small awards were made to other persons for interests in parcels 63 and 64, amounting in all to $2,110, making in all the sum of $56,610.

On motion to confirm the report, the court set it aside and appointed new commissioners, saying: " So much improper evidence was admitted by the commissioners it is clear an erroneous measure of damages was adopted by them if they paid any attention to the evidence, as they apparently did. This calls for refusal to confirm award objected to by the city and appointment of new commissioners. It is to be regretted that commissioners who have been employed for six years in hearing a case should not have their work approved. I am sure new commissioners will do substantial justice to all concerned in a very much shorter time."

From the order separate appeals were taken by the Coles, Miller and the Drew Seminary.

The rule to be observed in reviewing awards of commissioners in condemnation proceedings under the act now in question was stated by Mr. Justice CULLEN, writing the opinion of the court, in *Matter of Daly v. Smith* (18 App. Div. 194), where he said (pp. 195, 196): " It follows that an award of commissioners cannot be subjected to such a review as would obtain in the case of an appeal in an ordinary action. So it was held by the late General Term of this department. ' It is settled by authority that an award by commissioners will not be set aside for inadequacy or because excessive, unless the award is palpably wrong in either respect' (*Matter of Brooklyn Elevated R. R. Co.*, 87 Hun, 88), or, as has been otherwise stated, unless the award shocks our sense of justice. Nor will it be set aside for mere errors in the receipt or exclusion of evidence. To justify the reversal of an award for error of law, it must be made to appear that the commissioners adopted an erroneous principle in estimating the compensation. (*Matter of South Seventh Street,* 48 Barb 16; *Matter of Gilroy,* 78 Hun, 260.) "

I am thus brought to ask whether the commissioners adopted an erroneous principle in estimating the compensation, especially because it was for this reason that the award was vacated at Special Term.

*First*, as to the Coles' parcel 64, the report contains a bare statement of the award, as follows: " Thirty-seven thousand dollars ($37,000) is the sum ascertained and determined by us as aforesaid to be paid to the owners of, and persons interested in, the said land for the rights of milling, all rights of pondage and all rights to raise and lower the waters of Lake Gleneida, Town of Carmel, County of Putnam, and in full satisfaction of all damage sustained, or which may be sustained, by reason of the acquisition, use or occupation for the purposes indicated in the said act of said rights, and of all the real estate laid down on said map, exclusive of such amounts, as are herein awarded to claimants of water easements and rights to insert in Lake Gleneida and use pipes for water supply for domestic purposes, such awards forming parts, in unknown proportions, of the value of Parcels Nos. 63 and 64."

No reasons or methods of arriving at the amount are given. I am, therefore, left to an examination of the course of the evidence, some of which was admitted over the objection of the city, in order to arrive at the theory upon which the commissioners based the amount of their award.

Lake Gleneida, formerly Shaw's pond, covers about 177 acres of land, and is fed by drainage of surrounding country and by springs. The water of the lake varies in depth at different seasons, rising and falling from four to five feet. There is an outlet stream, upon which at its point of issuance is a dam with a gate and flume, which were constructed many years ago and have since been maintained. The method of the construction of the flume is not proved, whether it gradually sloped all the way to the mill pond or not. Whether there was anywhere a sudden fall which could be described as a waterfall does not appear. There is no evidence that the Coles ever used the water in any other way than as a feeder to their mill pond. Several hundred feet below the outlet of the lake, on a tract of 23 acres, is a mill, which, at the time of the institution of these proceedings, belonged to the appellants Cole. The original deeds to this mill property conveyed "the privilege of the

SECOND DEPARTMENT, MAY TERM, 1902.    [Vol. 72.

waters of Shaw's Pond." Intervening the Coles' tract and the dam was another tract of land, not belonging to the Coles, over and through which the water was conveyed by a flume to the Coles' mill pond simply as a feeder to fill the pond. At the lower end of this pond there was a dam by which the water was stored and used to run the Coles' mill, but there was no other use of the flume as a water power or waterfall. As already stated, the flume was used simply as a conveyer of the water to the Coles' mill pond.

The mill was operated by the Coles, its owners, who used the lake as a reservoir for it until 1870, when the city began to lease from them the mill site and the water privilege in the lake, for the purpose of using it as a part of the city supply. The leases were continued until the commencement of the present proceedings. The rental began at $2,000, and, decreasing each year, was at last only $900. There is considerable difference in the testimony as to the amount of water taken by the city, varying from 150,000,000 to 250,000,000 gallons annually.

In an action in the Supreme Court, brought in 1850, by Cole against Kelly, the owner of the land where the dam is situated, it was adjudged that Cole had the right to maintain the dam, gate and flume upon the lands of Kelly. In another action, brought in 1874, by Miller against Cole, it was decided that Cole's right to water was limited to flooding the lake to high-water mark and to a flow between that and low-water mark, a depth of four feet ten and one-half inches, for the use of the mill, but I do not find that it was adjudged that the Cole right to the use of the water was exclusive of all other owners of land about the lake. Indeed, the contrary appears by the evidence in this proceeding. The difference between high and low water amounts to about 282,000,000 gallons. There is a fall of thirty feet from the outlet to the mill, but this should not be taken as indicating that the Coles owned and used a thirty-foot waterfall power because they did not own and could not flood the intervening land.

By virtue of its leases the city built a new flume, the bottom of which at the dam was a little higher than that of the old flume, the depth between high-water mark and the bottom of the city flume being four feet ten and one-half inches.

The appellants Cole claimed the ownership of the waterfall or

power, the right to use the lake as a reservoir for their mill, and the right to flow the water for four feet ten and one-half inches; and it is this right which the commissioners appraised at $36,990. The twenty-three acres of land were not included in the award.

Section 11 of the act provides that when the commissioners have been appointed and qualified the city shall become seized in fee of the property to be taken. The commissioners qualified in December, 1893. The awards, therefore, relate to the values of the parcels at that time. While the record shows that the title to the twenty-three-acre tract and its appurtenances was in the Coles at that time, it is conceded by their counsel that the city acquired the fee of said tract in condemnation proceedings in August, 1895. But evidently that acquisition was after the divestiture of the rights described in the present proceeding as parcel 64, of which the city had already become seized by these proceedings.

Evidence was given on behalf of the Coles to show, *first*, the value of the water privilege as a water power in connection with the mill, and, *second*, the value of the water privilege as a storage capacity incident to the city water supply. I assume, for the purposes of this discussion, that the Coles had the right to the flow of water to the depth referred to for the use of their mill. They used the flow to keep full a pond on their own premises near the mill, and apparently for this purpose only. There is no testimony showing the use of the water power as a force; and as they did not own the land for some distance below the gate, it is difficult to see how they could have utilized the fall as power or derived any benefit from it. The water of the lake flowed from the dam to the Cole tract through a flume over the intervening tract, a distance of several hundred feet. The Coles had no title in or rights upon that tract, except the right to have the water flow over it or through it by means of the flume to their land. They could not have erected, and never did erect, upon it, either at the dam or elsewhere, any flume or other structure, for the purpose of utilizing the water as a waterfall power. Consequently, there was no such power which they used or which had any value to them.

The city has erected Reservoir D between the outlet and the Coles' property, and water flows from the lake directly into the reservoir.

The argument of the counsel for the Coles is that the use of the water was appurtenant to the land conveyed to them, on the ground that, at the time of the later conveyances, such use was open and notorious, and that the conveyances must be interpreted in view of that fact as indicating an intention to grant the use of the water as appurtenant to the land. That is true, but it would seem to follow that it was the use of the water as it was being used, and not any other use of the water, that passed as appurtenant. I find nothing in the evidence to justify the contention that there ever was a direct grant or a grant by implication to the Coles of the right to use the water as a waterfall power otherwise than as it was in actual use by them at the time of their conveyance.

Originally, the title to the property in question was in Adolph Philipse, and descended from him to Mary Gouverneur, formerly Mary Philipse. In 1811, she, with her husband, conveyed to Josephus Tillott, great-grandfather of the appellants Cole, twenty-three acres of land on the outlet stream of the lake, but distant about 200 feet from the lake, "with the privilege of the waters of Shaw's Pond." In 1818 Josephus Tillott mortgaged the property to Peter Tillott by the same description. This mortgage was foreclosed in 1829, and the property was conveyed to James Carver, who conveyed it back to Cole the same year. The mortgage did not contain the clause, "with the privilege of the waters of Shaw's Pond," and the subsequent records do not contain any such clause.

It is clear that the value of the water power other than as already stated should have had no place in the award. Yet the commissioners admitted testimony of several witnesses as to the value of this water power, which covered many pages of the record. It can hardly be assumed that the commissioners did not base their award to a greater or less degree upon this testimony, and this makes it manifest that they "adopted an erroneous principle in estimating the compensation." (*Matter of Daly* v. *Smith, supra.*) It is true that courts are unwilling to vacate awards for errors in receiving testimony, but where such admission clearly indicates the presence in the minds of the commissioners of an erroneous method of arriving at the award, the rule does not apply.

I have not deemed essential to the decision of this appeal a reference to the voluminous authorities upon questions of law cited in

the briefs of all the learned counsel, because I believe it to be evident from the course of proceeding and the evidence admitted, that the commissioners adopted an erroneous method of arriving at the amount of the award to the Coles.

The award to the Drew Seminary, for parcel 45, stands on a very different basis from the Coles' award. This parcel consists of a small piece of land containing about thirty-seven one-hundredths of an acre, situated on the borders of the lake. It has been used for more than twenty-five years for a pumping station to supply water to the seminary, which is several hundred feet distant from the lake and uses about 20,000 gallons daily. The city contends that the seminary did not have the title to the land and easement in the water right. The evidence, while not of the clear character usually required in an action, is sufficient to show title in one Merritt, for twenty years preceding 1891, to parcel 45 and to the land intervening the lake and the seminary property. Merritt conveyed a strip of land extending from the lake to the seminary grounds (excepting a railroad line) to one George C. Smith, who at that time was the manager or president of the faculty of the seminary. Smith died in 1892, leaving infant heirs who, after coming of age in 1895, executed a conveyance to the trustees of the seminary. The deed recited the fact that the conveyance to Smith was "for the use and benefit of Drew Seminary," and conveyed the right of the grantors "to any claim for damages and in and to any award to be made for any part thereof heretofore acquired by the Mayor," etc. It would seem fairly inferable that Smith was holding the property for the seminary.

Even if it could be said that the right to the use of the water was a mere easement, a grant of such easement would be presumed where the easement has been used and enjoyed for twenty years without interruption. (*Belknap* v. *Trimble*, 3 Paige, 577; *Smith* v. *Adams*, 6 id. 435.) Award for such an interest is provided for in section 12 of the act of 1893. The land of parcel 45 is not very valuable, nor are the buildings, but the use of the water by the seminary is of very great value. There was evidence to show that water sufficient for the seminary could not be obtained elsewhere for a sum considerably in excess of the amount awarded. I find no evidence of any erroneous method of arriving at the damages, and

for this reason, on well-settled principles, I think there was error in vacating the award as to parcel 45.

With regard to the Miller award : Henry F. Miller owned parcels 32 and 36 on the shore. Through and from these parcels water pipes led to other lands of Miller, and water had been drawn from the lake through these pipes for forty years. There was evidence that the value of this water right was $2,500 in each case. There was no other evidence. I find no error in the method by which the commissioners determined the amount of Miller's damages. For these reasons I agree with the prevailing opinion that the order should be modified by confirming the awards to the Drew Seminary and Henry F. Miller and as modified affirmed.

Order modified so as to confirm the awards of the commissioners to the Drew Seminary and Henry F. Miller, including costs and counsel fees, and as modified affirmed, with ten dollars costs and disbursements to each of the said appellants, the Drew Seminary and Henry F. Miller.