### In re SIMMONS et al.

(Supreme Court, Appellate Division, Third Department. January 22, 1909.)

1. EMINENT DOMAIN (§ 124*)—"COMPENSATION"—MARKET VALUE.

The compensation which is guaranteed to the owner whose property is taken for public use is its fair market value at the time of the taking for any use to which the property is adapted by its location, and for which it is available, and the value is not limited by the present use or the use for which it is sought to be taken.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 332, 333; Dec. Dig. § 124.*

For other definitions, see Words and Phrases, vol. 2, pp. 1352–1356.]

2. EMINENT DOMAIN (§ 134*)—COMPENSATION—MARKET VALUE.

In condemnation proceedings, it is proper to show, to determine the value, the condition of the property to be taken and its surroundings, the use to which it has been applied, and its capacities for other uses, including that for which it is required, and, when it is shown that the probability of sale for some special use has affected the price which the property will bring in the market, the adaptability thereof may be considered in determining the market value.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 356; Dec. Dig. § 134.*]

3. EMINENT DOMAIN (§ 134*)—COMPENSATION—VALUE OF PROPERTY.

To determine the value of land taken, the court may consider the condition of the property sought to be taken and its surroundings, the use to which it has been applied and its capacities for other uses, including that for which it is required, but not its value for any special use.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 356; Dec. Dig. § 134.*]

4. EMINENT DOMAIN (§ 134*)—COMPENSATION—MARKET VALUE.

To determine the value of land taken by a city for a reservoir for a water system, the court cannot consider the value of the land in conjunction with other parcels included in the reservoir site, the value of the reservoir, the feasibility and cost of conveying the water to the city, or the value of the water to the city, especially where it was substantially undisputed that the value for reservoir purposes was entirely due to the fact that the city had determined to build the reservoir.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 356; Dec. Dig. § 134.*]

Appeal from Special Term, Ulster County.

In the matter of the application and petition of J. Edward Simmons and others, as the Board of Water Supply of the City of New York, to acquire real estate for the city of New York, under Laws 1905, p. 2027, c. 724. From a final order of the Supreme Court confirming a report of the commissioners of appraisal as to parcel 271a, in section 7, of the Ashokan reservoir, the owners of the land to be taken appeal. Affirmed.

Argued before SMITH, P. J., and CHESTER, COCHRANE, KELLOGG, and SEWELL, JJ.

D. Cady Herrick, for appellants.
Jchn J Linson, for respondent.

SEWELL, J. The commissioners awarded $3,300 as the compensation which ought justly to be made by the city of New York to the appellant. The real estate for which the award was made consists of 60.6 acres, and is one of several hundred parcels taken by the city for the reservoir.

The chief question presented by this appeal is whether the commissioners erred in striking out the evidence of Cornelius C. Vermeule, a civil engineer, as to the value of the property in question, the intrinsic value of the reservoir, and the value of the water to be impounded by it. The witness testified that the fair and reasonable market value of this parcel on the 22d day of July, 1907, when it was taken by the city, was $99,280, and that in arriving at th;- estimate

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & ,ep'r Indexes

he considered the special adaptability of the reservoir site, of which the parcel is a part, and the special availability of it as compared with other possible sites; and, secondly, the reasonable value of water delivered to a city for city use and the cost of delivery. He also testified that the Ashokan reservoir site was worth $34,000,000, and that this valuation was based upon the capacity of the reservoir, the reasonable market price of the water when delivered at the furthest city in which it would be likely to be used and the cost of delivery; that the storage capacity of the property in question would be $76/100$ of 1 per cent. of the whole capacity of the reservoir; that, on that basis, the intrinsic value of the property taken would be $248,000 and the market value was 40 per cent. of that sum or $99,280. It therefore appeared that the opinion of the witness as to the value of the premises in question was based upon its value in conjunction with the other parcels included in the reservoir site upon the value of the reservoir, the feasibility and cost of conveying the water in pipes, or an aqueduct to the city of New York, and the value of the water to the city. It is to be noted that this evidence did not tend to prove the present market value of the property or its value at the time it was taken, but its probable value after other property is acquired, and millions of dollars are expended in the construction of a reservoir, which may and may not be built. It was simply his opinion of the value based upon the necessity of the land to the city or what the city could afford to pay rather than do without it.

It is too clear for argument that such an estimate of value is in the highest degree uncertain and speculative. It is sustained by no authority cited by the learned counsel for the appellant, and I think none can be found. On the contrary, it was held in Black River M. R. R. Co. v. Barnard, 9 Hun, 104, when the land sought to be taken was peculiarly ad; pted for railroad purposes that:

"It is the detriment to the owner for which he is to be compensated. When that has been ascertained, he is not to be paid more, because the land is peculiarly adapted to the use of the railroad."

To the same effect was the decision in Matter of Boston H. T. & W. R. R. Co., 22 Hun, 176, made by the General Term of this Department nearly 30 years ago, where Learned, P. J., said:

"The situation of hills and streams often determines as a matter of necessity where a public road must be built. If it must go through some narrow pass, where the land is owned by one person, he must be made to give up his land for the public benefit. All that he can have is compensation. Now, if the railroad company are to pay what the piece of land is worth 'for railroad purposes,' and if the road must be built through that pass, then they must pay any sum which the prospects of a successful railroad will warrant; for the land would be worth 'for railroad purposes' any sum, however large, which would not actually prevent the building of the road. Such a rule would do away with nearly all the benefit of the compulsory power of eminent domain. It would be giving more than compensation."

The just compensation which is guaranteed to the owner whose property is taken for public use is its fair market value at the time taken. Matter of Daly, 72 App. Div. 394, 76 N. Y. Supp. 28; Matter East Riv. Gas Co., 119 App. Div. 350, 104 N. Y. Supp. 239; Village

of St. Johnsville v. Smith, 184 N. Y. 341, 77 N. E. 617, 5 L. R. A. (N. S.) 922; Moulton v. Newburyport Water Co., 137 Mass. 163. It is true that he is not limited in compensation to the use which he makes of his property, but is entitled to a fair market value for any use to which it is adapted by virtue of its location and for which it is available.

In determining the question of value, it is proper to show the condition of the property and its surroundings, the uses to which it has been applied, and its capacities for other uses, including that for which it is required, and then the witness can give an estimate of its value in consideration of all the uses and elements of value; but he cannot give an opinion of its value for any special use. The value of property is not limited by the present use or the use for which it is sought, as either may be more or less than its market value; for example land may be valuable, abstractly considered, for reservoir purposes, but its market value would depend upon a demand for such a purpose. If no one desired the property for a reservoir, its value might be much less than for any other purpose. The question, therefore, is not whether the property is peculiarly adapted for the special use, but whether purchasers can be found who would pay more for it because of its adaptability to the use. It is only when it is shown that the chances or probability of a sale for some special use has effected the price which the property would bring in market that its availability or adaptability can be considered in determining the market value. Matter N. Y., L. & W. R. R. Co., 27 Hun, 151; Daly v. Smith, 18 App. Div. 197, 45 N. Y. Supp. 785.

No evidence was given in the present case tending to show that, before the land was taken by the city, it was regarded as more valuable because of its advantage of location and adaptability for use as a reservoir. It is substantially undisputed that the value "for reservoir purposes," is entirely due to the fact that the city has determined to build the reservoirs, and that the owner is now seeking to make the necessity of the city his opportunity.

Without further discussion, I think it is sufficiently clear that the commissioners did not err in striking out the evidence.

The order appealed from should therefore be affirmed, with costs. All concur.