In the Matter of the Application of the CITY OF NEW YORK, Acting by and through the Commissioner of Docks, Relative to Acquiring Right and Title to and Possession of the Wharfage Rights, etc., Not Owned by the City of New York, for the Improvement of the Water Front on the East River Appurtenant to the Bulkhead along the Easterly Side of Tompkins Street, from the Northerly Side of Stanton Street to the Southerly Side of East Houston Street, Borough of Manhattan, City of New York.

THE CITY OF NEW YORK, Appellant, Respondent; THE STATE ICE MANUFACTURING CORPORATION, Appellant; NASSAU FERRY COMPANY, Respondent.

First Department, June 12, 1925.

**Condemnation proceedings by New York city to acquire bulkhead rights on East river — consequential damage to upland separated from bulkhead by street must be allowed — title of claimant to wharfage rights in another parcel was determined in ejectment action by claimant's predecessors in title and is res judicata.**

In determining the damages to be awarded to a claimant whose bulkhead rights on the East river have been taken by the city of New York in condemnation proceedings, consequential damages to upland separated from the bulkhead

by a street must be allowed, although there is no proof that the claimant has ever used the bulkhead rights in common with the upland, since the bulkhead rights are not only appurtenant to the upland but are a part and parcel thereof, and are necessary to the fullest enjoyment of the upland which is available for conjunctive use with the bulkhead.

As to a second parcel, in reference to which the city contends that the claimant does not have title, it must be held that the validity of the claimant's title was determined in an ejectment action by claimant's predecessors in title, in which judgment was entered in 1859 in favor of the plaintiffs determining their ownership by virtue of a grant from the city in 1807 as extended by chapter 166 of the Laws of 1826, and, therefore, the question of title is *res judicata.*

APPEAL by the City of New York from so much of a final order of the Supreme Court, made at the New York Special Term in condemnation proceedings and entered in the office of the clerk of the county of New York on the 10th day of January, 1924, as awards damages to the Nassau Ferry Company for property described as damage parcel No. 2.

Appeal by the State Ice Manufacturing Corporation from said final order in so far as it affects said appellant on the ground that the award of $50,000 for its bulkhead rights is inadequate.

*George P. Nicholson, Corporation Counsel* [*John J. Mead* of counsel], for the City of New York.

*Louis Jakobson* [*Charles Lamb* of counsel], for the appellant the State Ice Manufacturing Corporation.

*O'Brien, Boardman, Parker & Fox* [*Edwin J. Freedman* of counsel], for the respondent.

McAvoy, J.:

The appeals in this proceeding relate to two out of three parcels which the city was acquiring for the purpose of improving the water front of the East river appurtenant to the bulkhead along the easterly side of Tompkins street from Stanton to Houston streets.

The appeal taken by the claimant, the State Ice Manufacturing Corporation, claims that an award of $50,000 for its bulkhead rights is inadequate. In this appeal the city is the respondent.

The appeal taken by the city of New York relates to the finding that the Nassau Ferry Company, a claimant in the proceeding, had title to what is known as parcel No. 2 on the damage map, which is 121 feet long and is the center parcel of the three taken in this proceeding.

Parcel No. 1 extends northerly 200 feet from the northerly side of Stanton street.

Parcel No. 2, being the next northerly parcel, covers 121 feet.

Parcel No. 3, the next adjoining to the north, extends 79 feet to the southerly side of Houston street.

No dispute arises over the award made for parcel No. 3, title to which is admitted to be held by the Nassau Ferry Company.

Parcel No. 1 is not disputed as to its title, which is alleged to be vested in the State Ice Manufacturing Corporation.

Title to parcel No. 2, however, is claimed to be vested in the city of New York.

After a hearing before the learned court at Special Term on the petition of the city to fix compensation for the various rights taken by the city, the court at Special Term awarded $50,000 for parcel No. 1; $30,250 for parcel No. 2, and $19,750 for parcel No. 3.

The city makes no objection to any of the awards upon the ground that the amount of compensation determined by the court was excessive, but as pointed out heretofore, the claimant, the State Ice Manufacturing Corporation, owner of parcel No. 1, claims that its award is inadequate. The ground upon which the inadequacy is claimed to be based is that the court refused to consider the claimant's ownership in the upland plot across Tompkins street in connection with the ownership of the bulkhead rights included in parcel No. 1, it being claimed that the upland plot, which was an acre in area, was available for conjunctive use with damage parcel No. 1, although Tompkins street intervenes between the properties. It is undisputed that the claimant and its predecessors in title had the exclusive use of the entire bulkhead for many years, but the court excluded all evidence of the entire ownership and confined the proof of damage to estimates of the value of the bulkhead rights separate and apart from the upland.

The city's contention in this regard is that since the present owner did not show that said bulkhead was used continuously and constantly in connection with the use of the property on the westerly side of Tompkins street, it could not obtain consequential damages by reason of the taking by the city of the wharfage rights included in the bulkhead known as damage parcel No. 1.

There was no proof that the claimant, the State Ice Manufacturing Corporation, ever used the bulkhead or bulkhead rights in common with its property on the westerly side of Tompkins street.

In the cases which the claimant cites as authority for the award of damages for consequential damages where bulkhead rights are taken when the upland is in a common ownership, the common use of the upland property in connection with the bulkhead, either immediately adjoining or across an intervening roadway or street had been shown, but this does not appear to be decisive of the claim. It is doubtless true as matter of experience that the bulkhead rights are more valuable as part of the entire ownership in property immediately opposite, although a street intervenes,

First Department, June, 1925.     [Vol. 213

than the bulkhead standing alone without the adjoining ownership. It has frequently been pointed out that the market value of the land to be taken may be considered in the light of its prospective use, and that such is the significance of the word " available " when used to describe the basis of use compensation to be awarded by the courts.

The award is to be made for the fair market value for all available uses and purposes. It is true, too, that market value includes every element of usefulness and advantage in the property, if it possesses advantages of location or is available for any useful purpose whatever. The fact that the owner has not made the precise use of the place which it is claimed would be its most advantageous employment does not militate against his right to have the value assessed which would make for the highest compensation.

We said in *Matter of Daly* v. *Smith* (18 App. Div. 194, 197): " It is doubtless true, and settled by authority, that the landowner is not limited in compensation to the use which he makes of his property, but is entitled to receive its greatest value for any purpose." And in *Matter of City of New York* (198 N. Y. 84, 88) the court said: " When the State compels a man to give up his land for public use, and permits him to recover, not what he thinks it is worth, but only its fair market value, he should at least have the right to prove every element that can fairly enter into the question of market value."

It would seem that since appellant's bulkhead rights were not only appurtenant to the upland but were part and parcel thereof and that they were necessary to the fullest enjoyment of the upland as a frontage on a street, the claimant would have the right to have his consequential damages fixed to the upland property by reason of its availability for conjunctive use with the bulkhead taken. Such use undoubtedly enhances the value of both the property and the easements, and since it is impossible to determine what that value is, because evidence thereof was excluded, the final decree fixing damage in that respect should be reversed and the matter remitted to the trial court to take proof of the damage occasioned to the upland by the taking of the bulkhead rights and to assess damages accordingly as to parcel No. 1.

The decree in respect to parcel No. 3 is not appealed from, either as to the amount of the award or the title to the property. The other question presented for consideration on the city's appeal is as to the ownership of the wharfage rights appurtenant to the 121 feet of bulkhead on the easterly side of Tompkins street known as parcel No. 2 on the damage map.

The claimant, the Nassau Ferry Company, insists that the

evidence, both oral and documentary, establishes conclusively that title to both parcels Nos. 2 and 3 on the damage map was vested in that company on December 7, 1921, the date when title became finally vested in the city of New York. Since this is a question of origin of title, it will be necessary to seek out the source of the early grants of the land in question, the various acts passed by the Legislature which have affected the city's waterfront, and to follow the chain of title to the time of the taking by the city.

The city originally became seized of the lands between high- and low-water marks around Manhattan Island by the Dongan charter of 1686, and this grant was confirmed by the Montgomerie charter granted in 1730. (See 1 Colonial Laws of New York [Comp. Stat. Rev. Comm.], 184, 193, 194; 2 id. 578, 588, 596, 599, 632, 633.) These charters were confirmed by chapter 584 of the Colonial Laws, passed on October 14, 1732. (2 id. 752.) In the Montgomerie charter the city acquired title to lands under water on the East river from Whitehall to what is now known as Houston street, formerly North street, and extending 400 feet beyond low-water mark under water of the East river. The description in the Montgomerie charter leaves no doubt that this land now sought to be taken was granted to the city by that instrument. In 1798 the common council of the city petitioned the Legislature for power to compel proprietors of lots fronting on the river streets to make those streets fit for public use within a time to be appointed by the common council. The Legislature passed chapter 80 of the Laws of 1798, which recites this petition, and authorized the city to lay out exterior streets along the North and East rivers, and provides for the making and completing, by and at the expense of the proprietors of land adjoining or nearest and opposite thereto, such streets by certain days to be fixed by the city. This act also provided that the proprietors of the lots which were not adjoining to the streets or wharfs were required to fill up and level at their own expense the intervening spaces, and " upon so filling up and levelling the same " they were to be entitled to and become the owners of the said intermediate spaces of ground in fee simple. The city accepted this act and wherever they availed themselves of the right which compelled all adjoining property owners to fill, the conditions must be deemed to have been accepted. Similar provisions were made by chapter 129 of the Revised Acts of 1801. (See Reprint Laws of 1801, chap. 129, § 3 et seq.; 2 K. & R. 127, § 3; Id. 128, § 4 et seq.) By virtue of the Repealing Act of 1801 (Chap. 80, 2d Meeting; Reprint Laws of 1801, chap. 193) the provisions of the act of 1798, except so far as revised in chapter 129 of the Revised Acts of 1801, seem to have been repealed. In substance the provisions from the

act of 1798 were continued in sections 3 *et seq.* of the Revised Acts of 1801. These and subsequent acts were revised by chapter 86 of the Revised Laws of 1813, which was the New York City Charter of 1813.

In 1807 Abijah Hammond was the owner of the upland along the shore of the East river then known as North street on the south, and he conveyed these premises to Adam and Noah Brown by deed dated April 20, 1807. After the passage of the act of 1798 and of the act of 1801 and after the deed from Hammond to Brown, the city's predecessors issued to the two Browns, the owners of the upland at high-water mark, a grant dated November 16, 1807, of the water lot extending along the southerly side of North (now Houston) street 330 feet from high-water mark to the intended permanent line which is 20 feet more easterly than a continuation of Mangin street as laid out from Grand to Broome street and extending southerly from the southerly line of North, now Houston, street, 200 feet, excepting so much as will be necessary to make Goerck street and Mangin or East street 70 feet. This grant contained the usual covenants to make Houston street 50 feet, Goerck street 50 feet and Mangin street or East street 70 feet wide, and it was said that the grantees upon complying with the covenants shall at all times thereafter have free use and enjoy all manner of wharfage, benefits and advantages accruing or arising from the wharf or wharves to be constructed. The act of 1798 and the act of 1801 were in force when this grant was made and Mangin street was to be the exterior street along the East river. In chapter 86 of the Revised Laws of 1813 (New York City Charter) the provisions of the acts of 1798 and 1801 were incorporated and various other enactments relating to improvements along the water front of the city are contained therein.

It was enacted in section 221 of the New York City Charter of 1813 (2 R. L. 432) that the said streets or wharves were to be completed by and at the expense of the proprietors of land adjoining or nearest and opposite to the streets or wharves, in proportion to the breadth of the lots, by certain days to be fixed by the city authorities, and it was again set forth that such proprietors of lots as were not adjoining to the streets or wharves were to fill up and level at their own expense according to the plan to be laid out by the city, and at a time to be fixed, the spaces lying and being between their several lots and the said streets and wharves; and the act provided " and shall upon so filling up and levelling the same be respectively entitled to and become the owners of the said intermediate spaces of ground in fee simple."

In 1817 Noah Brown died devising his property to his children

subject to the dower of his wife, and in the year 1824 his daughter made an ante-nuptial agreement conveying her interest in the property upon certain trusts to be carried out at her death as she might direct by her will.

In 1825 the common council of the city took action with respect to a plan for a permanent exterior street on the East river north of Corlears Hook under which plan Tompkins street was laid out as the exterior street on the East river. Subsequent thereto, chapter 166 of the Laws of 1826 was adopted, which set forth that Tompkins street along the East river, as it had been laid out and approved by the city authorities, shall be the permanent exterior street on the East river between Rivington street and Twenty-third street, and that East street on the said river between Grand street and Rivington street, as thus laid out and approved, shall be the permanent exterior street as so laid out and approved, and this act provided as follows: " * * * and that all grants made or to be made by the said mayor, aldermen and commonalty, shall be construed as rightfully made to extend thereto; and that all the provisions of the act entitled ' An Act to reduce several laws relating particularly to the city of New-York, into one act,' passed April 9, 1813, and the several acts amendatory thereof, and in addition thereto, shall be construed to apply to said Tompkins-street and East-street."

This act, therefore, lays out Tompkins street as approved by the city in the locality with which we are now concerned, and provides that all grants made by the city authorities shall be construed as rightfully made to extend to this exterior street, and it makes the provisions of the act of 1813 applicable to this exterior street. The Tompkins street as laid out is the same Tompkins street now shown on the damage map in this proceeding.

Mary Ross, who was the daughter of Adam Brown, died in 1831, seized of an interest in this property which she devised by will to trustees to convey to her children, Johanna M. Ross, Mary Ross, Samuel T. Ross, Jr., and William E. Ross, Jr.

Samuel T. Ross, the husband of Mary Ross, died March 9, 1832, and left these same children surviving.

The trustees under the will of Mary Ross conveyed to her children her interest in the property. By various conveyances and infant proceedings for the sale of real estate which are exhibits in the record, the title to these premises, following its course, became in the year 1846 vested in David Brown and Jacob Bell. Under the provisions of the act of 1826, the grant by the city to Adam and Noah Brown made in 1807 was extended to the new street and

13

First Department, June, 1925.    [Vol. 213

the provisions of the act of 1798, of the act of 1801, and of the act of 1813, relative to the making and building of exterior streets and filling in the intermediate space between the exterior line of grants already made and the new exterior street, and relative to the covenants contained in these grants, were declared to apply to Tompkins street.

The conveyances among the exhibits show that the premises in question extending from Mangin street on the west to Tompkins street on the east extending 200 feet southerly from the southerly side of Houston street, including the water rights and privileges and wharfage rights appurtenant to 200 feet of bulkhead on the easterly side of Tompkins street, have been conveyed by the parties in interest beginning with Adam and Noah Brown as grantees from the city in 1807, including the conveyances to the Nassau Ferry Company, the claimant, in the year 1877, and since such year title to the premises and wharfage rights has been vested in and claimed by the ferry company. The corporation counsel has conceded that the deeds purported to convey this property to the Nassau Ferry Company. The property which fronts on Mangin street and the property fronting on the west side of Tompkins street 200 feet in width from Houston street has been sold by the ferry company and title to the property has not been assailed. In none of these conveyances did the Nassau Ferry Company convey its wharfage rights appurtenant to the 200 feet of bulkhead but, so far as the record title goes, these remained in the company down to December 7, 1921, the date upon which title vested in the city.

That the title to the entire tract including this parcel was vested in the claimants' predecessors in title seems to have been adjudicated in effect by the courts. The city was at one time using the portion of the block under consideration immediately south of Houston street as and for a ferry slip, using the same in connection with the ferry operating from the foot of Houston street. The then owners of the title began in the year 1857 an action in the Court of Common Pleas against the Mayor, Aldermen and Commonalty of the City of New York and other defendants, lessees of the city.

The summons was served upon the defendants during the month of January, 1857. Only the Mayor, Aldermen and Commonalty of the City of New York appeared and defended the action. The plaintiffs in the action were Abraham C. Bell, Harriet W. Bell, Frederick F. Cornell, Elizabeth C. Cornell, his wife, and Susan D. Brown, in whom was vested title to the entire premises fronting on Tompkins street 200 feet, together with all water rights and privileges appurtenant thereto.

The complaint is in the ordinary form in ejectment alleging ownership in fee and unlawful entry and possession by the defendants with a claim for damages.

The plaintiffs allege that they have lawful title as tenants in common as owners in fee simple to the premises described, together with all water rights and privileges appertaining thereto. The premises actually in litigation were described as a triangular piece or gore of land immediately south of the southerly side of Houston street seventy-five feet in width on the river and ten feet in width on the inshore end and in length on the southerly side of Houston street one hundred and twenty-five feet.

By order paragraph 1 of the complaint was amended to make the description of the premises in the complaint correspond to the proof. The interests of the plaintiffs are then alleged as follows:

" 5. That the said David Brown died seized and possessed of the one undivided half part of the said property and the said Jacob Bell died seized and possessed of the other undivided half part of the said property.

" 6. That the said Brown and Bell about the year 18—. purchased the same of the heirs of Adam and Noah Brown who died seized thereof and who held the same during their lifetime under a grant from the Mayor, Aldermen and Commonalty of the City of New York made in the year 1807."

Then follow allegations that the defendants entered upon the premises and unlawfuly withheld possession; that the defendants other than the city are lessees and grantees of the ferry and that the plaintiffs have been damaged in the sum of $10,000.

Judgment for the possession of the premises and damages for unlawfully withholding is demanded. The defendants other than the city did not appear in the action.

The city in its answer denied the title of the plaintiffs and made specific denial and alleged title in itself as follows:

" *Fifth.* And these defendants further answering aver, that they deny that the said David Brown died seized or possessed of the one undivided half part of the said property, or of any part thereof, or that he was ever seized or possessed of any part thereof.

" *Sixth.* And these defendants further answering aver that they deny that the said Jacob Bell died seized or possessed of the one undivided half part of the said property, or of any part thereof, or that he was ever seized or possessed of any part thereof.

" *Seventh.* And these defendants further answering deny that the heirs of Adam and Noah Brown in said complaint mentioned were ever seized or possessed of the same, or that they held the

same under any grant from these defendants, or that these defendants ever made any such grant to the said Adam and Noah Brown in the year 1807 or at any other time."

" *Tenth.* And these defendants further answering aver that at the time in the said complaint mentioned and for many years prior thereto these defendants were, and now are, the owners in fee simple of the premises in the said complaint described, and of every part thereof and that at that time, and for many years prior thereto, they have been and now are in the possession of said premises and real estate and of every part thereof."

So that we have a direct issue involved in the action as shown by the pleadings as to whether the plaintiffs owned the premises described in the complaint as amended on the trial, under and by virtue of the grant of 1807 from the city to Adam and Noah Brown, as extended by the act of 1826, the plaintiffs alleging such ownership and the city denying the same.

Tompkins street had been laid out by the city in the year 1825, and such action was ratified and confirmed by the act of the Legislature (Laws of 1826, chap. 166), in which it was provided that all grants made or to be made by the city " shall be construed as rightfully made to extend thereto."   (See, also, Laws of 1826, chap. 58, § 2, which was passed February 25, 1826, and was repealed by Laws of 1826, chap. 166, *supra*, passed April 13, 1826.)

The grant of 1807 extended to a line " which is 20 feet more easterly than a continuation of Mangin street, as laid out from Grand to Broome street."

Mangin street was originally sixty feet wide but was reduced to fifty feet in width.

As the premises described in the complaint, as amended, extend westerly from a line some feet easterly of the easterly line of Tompkins street, 223 feet 3 inches, such premises did not extend westerly to the exterior line of the premises conveyed by the water grant to Brown of 1807 and of necessity the plaintiffs had, in order to sustain their action, to prove title to the entire tract in front of the exterior line of grant of 1807, 200 feet in width from the southerly side of Houston street.   That they did so is found by the referee and the judgment based upon his findings, and the city acquiesced therein and admitted its correctness by the payment of the amount of damages awarded by the referee.

By consent the issues raised by the pleadings were referred to William Fullerton as sole referee to hear and determine.

The referee caused a survey of the premises to be made and attached the same to his report in which he made findings of fact, and conclusions of law.

The report of the referee, dated July 22, 1859, was in favor of the plaintiffs.

The material portions of this report are as follows: " That the plaintiffs are the owners in the interests and shares, respectively, as hereinafter stated, and are entitled to the possession of certain real estate situate in the city of New York at the foot of Houston Street and on the East River, which is bounded and described and contains as follows: Commencing at a point on the East River distant 79 feet southerly from the southerly line of Houston Street as the same is projected upon a certain map entitled ' Map of the Encroachment of the Houston St. Ferry on the property of Bell and Brown ' made and proved by Egbert L. Viele, City Surveyor, bearing date November 15, 1858,   *   *   *   thence running along lands belonging to the plaintiffs in a varying course according to said map Northwesterly 237 feet and 5 inches, to a point in the Southerly line of said Houston Street, where the same is intersected by the said Northwesterly line; thence Easterly along the said Southerly line of Houston Street, 223 feet and 3 inches; and thence Southerly in a straight line 79 feet to the place of beginning   *   *   *   ."

The referee reported as matters of law: " That the said plaintiffs are entitled to judgment against the said defendants for the sum of $8,650, together with costs, and judgment for possession of the said premises."

The map attached to and made part of the aforesaid report was offered in evidence.

Upon said map the entire block between Houston and Stanton streets extending from Mangin street to the easterly side of Tompkins street is shown, and therefrom it appears that the entire block, with the exception of the ferry slip and portions of Tompkins street was filled in and shown by green coloring and is designated by the following title: " Map of the encroachment of the Houston St. Ferry on the property of Bell and Brown, November 15, 1858."

Judgment was entered upon the referee's report July 29, 1859, for recovery of possession of the premises described as in the referee's report and for the sum of $9,330.50, the amount of the award of the referee, with interest, costs and disbursements.

The money judgment was docketed against the Mayor, Aldermen and Commonalty of the City of New York.

No appeal was taken by the city, but it appears from an entry on the judgment docket book that the judgment was paid and satisfied of record on January 11, 1860.

In 1859 the city leased for $1,400 seventy-five feet of land

south of Houston street and along Tompkins street to May 1, 1863, and the city accepted and paid rent for such lease.

The foregoing facts establish the title of the predecessors in interest of the Nassau Ferry Company to the intermediate space between the exterior line of the grant to Brown in 1807 and Tompkins street as laid out by the act of 1826, filled in in pursuance of the ordinance of the common council, approved by the mayor in 1856, together with all water and wharfage rights appurtenant thereto.

Subsequently the unfilled portion of Tompkins street and Houston street out to Tompkins street were filled in and made.

The city has levied taxes upon the property for many years, which have been paid by the Nassau Ferry Company and its predecessors in title.

The Nassau Ferry Company, claimant, was incorporated in the year 1876.

By mesne conveyances the premises here under consideration between Mangin and Tompkins streets together with water and wharfage rights along the easterly side of Tompkins street, extending 200 feet southerly from the southerly side of Houston street, became vested in the Nassau Ferry Company in the year 1877.

Since the judgment in the ejectment action in 1859, no claim of title has ever been made by or in behalf of the city of New York to the bulkhead rights until the trial of this proceeding.

Many acts of the city with regard to this property as shown by the evidence indicate an acknowledgment of ownership of claimant and its predecessors in title down to the time of the vesting of title in the city under this proceeding.

The effect of the act of 1826 was determined in the action in the Court of Common Pleas in 1859, in which judgment was rendered in favor of the plaintiffs against the city for the possession of a portion of the premises here under consideration.

The direct issue as to whether the effect of the act of 1826 was to extend the grant of 1807 to the exterior line of Tompkins street was pleaded in the complaint, denied in the answer of the city and title in the city alleged.

That issue was decided against the city and judgment was rendered therein in favor of the plaintiffs with an award for damages which were paid by the city without any appeal.

This act was again under consideration by the courts in the very recent case *Matter of City of New York (Willard Parker Hospital)* (217 N. Y. 1), in which CUDDEBACK, J., writing for the court (at p. 6) said: " The act of 1826, referred to and adopted chapter 86 of the [Revised] Laws of 1813. The act of 1813 *

_____

* See 2 R. L. 432, §§ 220, 221.— [REP.

authorized the city to lay out, according to a plan to be agreed upon, regular streets and wharves which should be completed at the expense of the proprietors of the adjoining lands,. and provided that such proprietors should fill in and level at their own expense the spaces lying between their several lots and the said streets and wharves, and upon so doing should become the owners of the intermediate spaces of ground in fee simple.''

That this judgment is *res adjudicata* as to the title of claimant Nassau Ferry Company to the wharfage rights appurtenant to the seventy-nine feet of bulkhead on the easterly side of Tompkins street immediately southerly from the southerly line of East Houston street is not disputed.

The issue tried was whether title to the premises specifically described in the complaint was in claimant's predecessors and was dependent upon and could only have been declared to be in the plaintiffs under and pursuant to the grant of 1807 and the act of 1826. That was the issue raised by the pleadings and the judgment was in effect *res adjudicata* as to the entire premises, 200 feet° wide including the wharfage rights on the easterly side of Tompkins street appurtenant thereto.

The action was brought to recover a triangular piece of ground, immediately adjacent to the southerly side of East Houston street, having a frontage on the East river of seventy-nine feet extending westerly to a point on the southerly line of Houston street, which point is a number of feet easterly from the easterly line of the premises specifically described in the grant of 1807 from the city to Adam and Noah Brown.

The plaintiffs allege title in fee to the property under the grant of 1807 to Adam and Noah Brown.

The pleadings disclose that the only issue to be determined was title under the grant of 1807 and the act of 1826.

The map referred to by the referee in his report shows: A block of land bounded by Mangin street on the west, by Tompkins street on the east, by Houston street on the north and by Stanton street on the south.

The entire block, with the exception of the triangle immediately adjacent to the southerly side of Houston street, used for the ferry slip, is colored green, and in the center thereof appears the following words: '' Map of the Encroachment of the Houston St. Ferry on the property of Bell and Brown. November 15, 1858.''

At the date of this judgment the title to the entire block, together with all wharfage rights appurtenant to the easterly side of Tompkins street, was vested in the legal representatives of Brown and Bell, the plaintiffs in the action.

Upon the same map, portions of Tompkins street filled in are also indicated with the green coloring. There could be no clearer indication that the issue tried and determined was the question of title, alleged in the complaint by the plaintiffs under the grant of 1807 as extended by the act of 1826, and denied by the city in its answer.

That such judgment is *res adjudicata* with respect to the entire premises has been determined by the courts of this State and by the Federal courts.

In *City of New York* v. *New York City Railway Co.* (193 N. Y. 543, 551) the court, after referring to the facts in the previous action said: " The record, which was read in evidence, sustained the plea in every respect and judgment was rendered accordingly. The parties to the present action are privies to the parties in that and the proof in that was similar in character to the proof in this. The method adopted of establishing the facts by stipulation, at least in the absence of fraud which is not claimed, does not differ in its effect from the method of establishing the facts by evidence introduced in the ordinary manner. The facts having been established, the court announced the law applicable to those facts, and even if the decision was wrong, it is as binding on the parties in this action as it was on the parties in that, upon the principle of *res adjudicata*. The law once laid down upon a specified state of facts is binding upon the parties to the controversy and their privies for all time." (*Brown* v. *Mayor, etc., of New York*, 66 N. Y. 385, 390; *Williams* v. *Barkley*, 165 id. 48.)

There are many other authorities to the same effect and all point to a holding that such a judgment as to a portion of the premises which necessarily involves the whole tract is *res adjudicata* as to title.

We think the title of claimants to parcel No. 2 is fully established and that the final order should be affirmed as to said parcel No. 2.

The order should be reversed as to parcel No. 1, with costs to the claimant, appellant, and the matter remitted to Special Term to proceed in accordance with opinion.

The order should be affirmed as to parcel No. 2, with costs to the claimant, respondent.

CLARKE, P. J., DOWLING, FINCH and MARTIN, JJ., concur.

Order reversed as to parcel No. 1, with costs to the claimant, appellant, and the matter remitted to Special Term to proceed in accordance with opinion. Order affirmed as to parcel No. 2, with costs to the claimant, respondent. Settle order on notice.