In the Matter of the Application of THE CITY OF NEW YORK, Relative to Acquiring Title to the Real Property Required for the Opening and Extending of East River Drive, and the Approaches Thereto, from East 49th Street to East 93rd Street, and for the Additions to Carl Schurz Park, between East 89th Street and East 90th Street, in the Borough of Manhattan, City of New York.

THE CITY OF NEW YORK, Appellant, Respondent; ROBERT W. GOELET, GEORGE VICTOR ROBERT JOHN INNES-KER, DUKE OF ROXBURGHE, and THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Respondents, Appellants.

First Department, July 3, 1942.

*Eugene L. Brisach* of counsel [*Julius Isaacs* and *Leo Brown* with him on the brief; *William C. Chanler, Corporation Counsel*], for the appellant-respondent The City of New York.

*Charles Lamb*, for the respondents-appellants Robert W. Goelet and Mutual Life Insurance Company of New York.

*Ralph L. Baldwin* of counsel [*Truman H. Baldwin & Sons*, attorneys], for the respondent-appellant George Victor Robert John Innes-Ker, Duke of Roxburghe.

DORE, J.   The City of New York and owners of certain damage parcels cross-appeal from a final decree in a condemnation proceeding to acquire real property for part of what is called the East River drive.   The properties here affected are: (1) the block fronting on the East river from Eighty-first to Eighty-second streets (Damage Parcels 54 and 55, Robert W. Goelet, claimant, and Damage Parcel 56, Duke of Roxburghe, claimant); and (2) the block fronting on the river from East Eighty-third street to Gracie Square (Damage Parcels 64-A, Mutual Life Insurance Company, claimant).

The proceeding was instituted by resolutions of the board of estimate and apportionment dated July 28, 1938, and March 9, 1939.   The order granting the application for authority to condemn was entered March 29, 1939.   The Legislature on May 25, 1939, enacted chapter 501 of the Laws of 1939 (N. Y. City Adm. Code, § H 41–10.1), authorizing the institution of proceedings " for the construction of a public street or highway partly at grade, partly

double deck and partly double deck with a third deck to be used for pedestrian traffic or park purposes or as a cover over such street * * *. Such plan may provide for the construction and erection of a wall along the west side of the double deck sections of such street or highway and of a curb or wall along the west side of such street or highway where the same is at grade, barring access thereto."

Special Term held the proceeding was not an ordinary street opening, and that the act itself provided for the taking which was not for a street but for an elevated highway viaduct structure with different levels, resulting in damage to the abutting owners. The court allowed $30,000 for the improvements on Damage Parcels 54 and 56 valued as a water front coalyard (divided by stipulation, $12,000 for Damage Parcel 54 and $18,000 for Damage Parcel 56). The city appeals, contending that no award for such improvements should be made. The court also allowed an award for part of the fee actually taken and riparian rights on these two parcels but made no award for consequential damages to the residue, and claimants appeal.

On Damage Parcel 64-A the court awarded the claimant Mutual Life Insurance Company $150,000 as consequential damages to the improvements. Claimant appeals on the ground that the award is inadequate. The city appeals on the ground that no consequential damages whatever should have been allowed.

The learned Special Term properly held that this was not the taking of property for an ordinary street as that term is generally understood, but for a specifically different type of concrete structure at different levels completely barring access, and resulting in damages to abutting owners; that the act itself created the damage and not any proposed subsequent change for a future use of the street; and that *Sauer* v. *City of New York* (206 U. S. 536) is not controlling as the act under which title was taken in that case differed materially from the act herein under consideration, as did also the circumstances surrounding the taking. Here the city erected a concrete and steel triple deck structure, with a solid wall on the westerly side completely barring all access of abutting owners. All the evidence establishes that this is not a taking for ordinary street purposes.

The city's contention, raised for the first time on appeal, that chapter 501 of the Laws of 1939 has no application to this proceeding because it was not effective when the title to this property vested by the order of March 29, 1939, is overruled. Neither on the trial nor on the hearing of objections was this issue raised. If it had been raised, additional opportunity for offering proof to show

what was within the contemplation of the authorities would have been afforded. (*Matter of Mayor* [*Trinity Avenue*], 81 App. Div. 215; *Vermeule* v. *City of Corning*, 186 id. 206; affd., 230 N. Y. 585.) The report of the chief engineer of the board of estimate, July 28, 1938, before the vesting of title, specifically stated that the comprehensive improvement would be constructed " partly in tunnel and partly elevated without direct access to the abutting property," and that accordingly a local area of assessment be dispensed with. On the merits, an examination of the proceeding authorizing the condemnation indicates that from the beginning the purpose of the taking, so far as these damage parcels are concerned, was not for an ordinary street but for the construction of a concrete structure barring access of abutting owners, and that the claimants may not be deprived of property rights without just compensation. (*Vanneck Realty Corp.* v. *City of New York*, 259 App. Div. 461; affd., 284 N. Y. 403; *Matter of City of New York* [*Speedway*], 168 id. 134, 147.)

We will now consider the specific rulings on damage parcels affected.

### 1. DAMAGE PARCELS 54 AND 56.

#### (a) THE CITY'S APPEAL.

Before the taking, Damage Parcel 54 (Robert W. Goelet, claimant) consisted of the southerly half of the block between East Eighty-first and East Eighty-second streets from East End avenue to the East river; Damage Parcel 56 (Duke of Roxburghe, claimant) was the northerly half of that same block. The city took in fee the entire East river frontage of both parcels, a substantial area. The court allowed $20 a square foot for the land thus taken; the court also awarded $18,375 to each parcel for riparian rights at a certain amount per linear foot; $30,000 for the improvements consisting of a dock, bulkhead, coal hoist, coal conveyor, coal pockets and hoppers used in connection with a going water front coalyard; but denied any award for consequential damage to the residue. The city takes no appeal from the awards for the land taken in fee or for riparian rights, but contends that the award of $30,000 for the destruction of the water-front coalyard was improper as it was a wholly inadequate improvement for the land now zoned for residence and suitable for high class apartments or hotels, and should receive no consideration as an improvement. We think the Special Term properly held that the availability for use had been destroyed by the taking and that the claimants were entitled to awards on the theory of the total destruction of the business as such. (*Matter of City of New York* [*Pier Old No. 49*], 227 N. Y. 119; *Balshan* v. *State of New York*, 230 App. Div. 142; affd., 255

N. Y. 596.) The amount awarded is fair and adequate. The award should be affirmed.

(b) APPEAL OF CLAIMANTS GOELET AND DUKE OF ROXBURGHE.

In its opinion the court expressly stated that no award for consequential damages was made for any parcel in the proceeding except 64-A, the property further north at 10 Gracie square. Claimants (Damage Parcels 54 and 56) contend that the plots before the taking, zoned for residence, were available for high class apartments with access on the river side to a full and unobstructed view; that consequential damage to the remaining portion of the property owned by claimants was clearly caused by the taking itself; and that such damage is to be distinguished from damages caused by taking part of the fee and the riparian rights for which damage awards were properly made.

The law is now clear that where part of a parcel of real estate is taken by condemnation for public use, the owner is entitled not only to the value of the part taken but also to the consequential damages to the remainder, including the results of the use to which the portion taken is to be put. (*Town of Fallsburgh* v. *Silverman*, 260 App. Div. 532; affd., 286 N. Y. 594; *Matter of Board of Water Supply of N. Y.*, 277 id. 452; *South Buffalo Railway Co.* v. *Kirkover*, 176 id. 301.) In *County of Erie* v. *Fridenberg* (221 id. 389) the court said, " Just compensation is reasonable and adequate compensation and the equivalent for the actual loss that the owner sustains by reason of the public taking his private property. The rights of the parties in this case are not controlled by the rule relating to the rights of adjoining owners in the legitimate use of their respective properties."

The award for riparian rights apparently was at the same rate per linear foot as the award for every other parcel where riparian rights were taken. Accordingly it seems that such awards did not include any consequential damages to the residue remaining, of various sizes and different locations, as the awards would then vary in unit value. From the court's opinion it is clear that in estimating the value of these parcels before and the value after the taking, the court gave no consideration to any element of consequential damage but only to the damage involved in the so-called direct taking of part of the fee and the destruction of riparian rights.

One whose property is taken is entitled to be paid only the value of the property, considering it in its condition and situation at the time it is taken. (*Matter of City of New York* [*West 10th Street*], 267 N. Y. 212, 220.) At such time the residue of this property was unimproved except for the temporary usage as a coalyard which antedated the zoning for residence.

It was, however, at the time of taking zoned for residence, and the testimony establishes that its most suitable use is for high-class apartments. The residue of the land was affected adversely or damaged for such availability for use by the taking and the use to which the part taken was put. The concrete wall on the westerly side of the drive is apparently six to eight feet above the grade of the abutting property at Damage Parcels 54 and 56. In *Matter of City of New York* (*North River Water Front*) (219 App. Div. 27), Mr. Justice MARTIN (now Presiding Justice), writing the unanimous opinion for this court, held that the commissioners' award in that case for consequential damages to the property remaining in the same ownership was " based on correct principles [and] should be upheld."

In our opinion some consequential damage was caused to the remainder of claimants' property (Damage Parcels 54 and 56) resulting from the taking. An award therefor should have been made, and in so far as the decree failed to make any award for consequential damage, it is erroneous and should be reversed and returned to Special Term for the making of such award.

## 2. DAMAGE PARCEL 64-A.

The next parcel is known as No. 10 Gracie square, referred to in the decree as Damage Parcel 64-A, owned by the Mutual Life Insurance Company of New York. The court allowed an award for riparian rights in the sum of $35,000 and an additional award for consequential damages to the improvements of $150,000.

The court found that the apartment house itself was outside the line of taking, overruling a contention of the claimant that a small area of less than 800 square feet of upland was actually taken in fee. Claimant contended that the shore line shown on the so-called Randel map, a survey made in 1820 by John Randel, Jr., did not indicate the high-water line but was merely a so-called meander line drawn for the purpose of indicating the sinuosity of the stream and not a true boundary for the purpose of showing the high-water line, and relied on actual surveys, contending they proved that the high-water line lay easterly of the Randel line and east of the westerly line of the East River drive and, therefore, within the line of the taking. After considering all the evidence, we think the trial court properly held that the proof offered was too uncertain to warrant change of the line of high water as indicated on the Randel map, and accordingly that the area of the claimant's ownership was properly limited on the east by the shore line indicated on that map, which is westerly of the west line of the East River drive, and that no part of the fee of claimant's upland was acquired.

Claimant also contended that the award of $150,000 for conse-

quential damages to the improvements No. 10 Gracie square was wholly inadequate. The city, as indicated, contended there was no ground whatever for making any award for consequential damages to this parcel, because the property acquired was for street purposes and an owner of property not taken was not entitled to any award for consequential damages resulting from the construction of the highway.

The premises in question extend from Eighty-third street fronting on the East river to the next northerly street, known as Gracie square, with a depth of 105 feet on each street. The property is improved with a fifteen-story penthouse brick and limestone apartment house, known as No. 10 Gracie square. Counting the stories below grade facing the river, there are apparently nineteen stories in all with forty-four apartments, 497 rooms and twenty-three servants' rooms. The apartments are of the very highest type, designed, built for, and occupied by, persons of ample means paying the highest rentals. Before the taking, all the apartments except two maisonettes had extensive views of the river. The first floor apartments were duplex with bedrooms on the second floor. Some apartments were triplex. The apartments ranged from six rooms and three baths to twenty-five rooms and ten baths. Before the improvement, Eighty-third street and Gracie square were dead-end streets. The building also had a private terrace promenade facing the river. Prior to the taking, claimant's property had an unobstructed view easterly and northerly. The Carl Schurz Park abuts on the north side of Gracie square and Gracie square was open to a point approximately sixty feet west of the easterly line of the building. East Eighty-third street was open to the easterly line of the building.

The use to which the property taken has been put is not a street but a triple-deck concrete and steel structure, here forty feet in height, directly in front of claimant's property on the river, completely shutting off the three lower floors which now face a blank concrete wall in close proximity to the building. The first and second levels are for vehicular traffic and the top level is a public promenade for pedestrians directly in front of the building. Immediately south of East Eighty-third street there has been built, in addition, a playground about twenty feet above the promenade, one hundred feet in length and the approximate width of the driveway. The top of the concrete structure rises about five feet above the first floor above grade, a duplex apartment.

Instead of the unobstructed easements of light and air and quiet exclusiveness with magnificent views across the river to Long Island, the tenants, at least on the lower floors, find them-

selves practically on what is the equivalent of a public boardwalk in close proximity to the windows of their homes. Few would ever think of selecting a permanent home at the edge of a public boardwalk. Obviously a tenancy paying the rents commanded by the situation before the taking will not continue to do so. The structure has almost completely destroyed rental value of at least two floors on the river side and substantially decreased rental value of other floors.

In its main brief the city relied on *Matter of City of New York* (*Jacob Riis Park*) (248 App. Div. 902 [1936]; 262 id. 902 [1941]), presenting a state of facts it claimed was substantially similar to that now before the court. There the Appellate Division of the Second Department denied an award for consequential damages to property " completely outside of the northerly line of the taking." The damage was caused by the erection of a new boardwalk in front of the remaining property. But the Court of Appeals has reversed the Appellate Division (sub nom. *Matter of City of New York* [*Rockaway Beach*], 288 N. Y. 75), and in a per curiam opinion (April 23, 1942) said: " This was an initial acquisition by condemnation. (See *Matter of City of New York* [*Putnam Ave. West*], [FINCH, J.], 108 Misc. Rep. 427, 431.) The true measure of the damages to which claimant was entitled was the market value of the entire tract and improvements before the taking, less the value of the remainder after the taking, *including such damages resulting to the residue as were sustained by reason of the use, permanent in character, to which in this instance the portion taken had already been put by the one acquiring it* (*County of Erie* v. *Fridenberg*, 221 N. Y. 389; *Town of Fallsburgh* v. *Silverman*, 286 N. Y. 594; *South Buffalo Ry. Co.* v. *Kirkover*, 176 N. Y. 301; *Matter of Culver Contracting Corp.* v. *Humphrey*, 268 N. Y. 26, 36; *Matter of Board of Water Supply of City of New York*, 277 N. Y. 452, 456; *United States* v. *Grizzard*, 219 U. S. 180; *Matter of City of New York* [*Northern Blvd.*], 281 N. Y. 48, 53)." (Italics ours.) Since the reversal, the city contends in its reply brief that the case it fully relied on is now inapplicable because no part of the Mutual Life Insurance Company's property was taken. We think the distinction attempted to be made is without a difference.

Under subdivision 5 of section 291 of the New York City Charter the term " real property " is defined to include " all lands and improvements, land under water, water front property,  *  *  * all easements and hereditaments, corporeal or incorporeal, and every estate, interest and right, legal or equitable, in lands or water, and right, interest, privilege, easement and franchise relating to the same  *  *  *." In the final analysis, in the physical order,

the order of actual being or of existence, the real property itself, i. e., the land, the corporeal substance or part of the earth affected, is not "taken" or destroyed. After the so-called "taking" it is still there. More accurately, what is "taken," i. e., what is completely or partially destroyed or lessened, is a private right in the land, either the right to the fee, the entire title, or something less, e. g., riparian rights or easements, or any of the rights referred to in the Charter section above as "real property." But in each case, to the extent that such rights are invaded, lessened or completely destroyed, there is in contemplation of law a "taking," and that taking is in fact by its operation and effect a direct injury to the owner in his property rights and a diminution of his rights of user. But to constitute a taking, the injury must be special, and not a mere general injury common to the public at large; the damage must be peculiar to the particular property. (*Eaton* v. *Boston, Concord & Montreal Railroad,* 51 N. H. 504; 12 Am. Rep. 147; 3 Sedgwick on Damages [9th ed.], § 117, pp. 2266, 2268.)

In overruling an order of the Special Term which refused to allow consequential damages in a condemnation proceeding on the ground that such damages had been awarded for "a non-physical consequence not amounting to an actual interference with the lands" of the claimants, the appellate court in *Town of Fallsburgh* v. *Silverman (supra)* said: "The rule of just compensation made mandatory by both our State and Federal Constitutions should not be thus narrowly confined. Property owners whose lands have been preempted by the sovereign power of the State must be fully and fairly compensated for the losses which they have sustained. Such compensation includes not only the market value of the lands taken from them but also the reduction in value of the remainder. The portion of the hotel property left to the Silvermans has been rendered much less attractive by reason of the erection and operation of a sewage disposal plant in close proximity and full view of both the recreational area and the hotel. While it may to some slight extent be a mere state of mind that keeps guests away from this hotel, nevertheless the damage to the hotel owners is very real. Theirs is not an imaginary loss. The value of their hotel has been substantially reduced by the act of the respondent which the owners were powerless to prevent."

A taking of riparian rights is a taking of real property. In *Matter of City of New York [Speedway] (supra)* the court said: "The Harlem river is no less a highway than any of the public streets of New York city. It is the settled law of this State that the owners of lands abutting upon such streets have easements therein which are property rights and cannot be destroyed or abridged for a public

use without compensation. (*Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 168.) In that case Judge TRACY said, ' to constitute a taking it is sufficient that the owner claiming compensation has some right or privilege, secured by grant, in the property appropriated to public use, which right or privilege is destroyed, injured or abridged by such appropriation.' "

" The ' taking ' is not merely a diminution of the property by the value of the part taken; the taking *affects* the residue, the part not taken  *  *  *  and this injury to the remainder is a *direct* consequence of the taking." (3 Sedgwick on Damages [9th ed.], § 1113, pp. 2258, 2264.) Such taking is a diminution of the right of user and the injury is special and peculiar to this particular property and not common to the public at large.

Assuming the correctness of the Randel map, the city's title to the foreshore or land under water is held in trust for the public, and the riparian rights of an abutting upland owner cannot be destroyed without just compensation except where the improvement is for the promotion of commerce or navigation. The net result of this improvement in relation to these parcels is the total destruction of the use of the shore for purposes of commerce or navigation. It is true the claimant received a substantial award for the taking of the riparian rights, but that award, as indicated above, did not represent any allowance for consequential damage for which the court expressly allowed an additional $150,000 on the ground that the improvements were substantially damaged by the structure erected directly in front of the property, a few feet away from it, cutting off for all time a number of rentable apartments and otherwise lessening the value of the property.

The trial court properly allowed consequential damages to Damage Parcel 64-A (*Matter of City of New York* [*North River Water Front*], 219 App. Div. 27, 38), but in our opinion the damages allowed are inadequate. The award for consequential damages should be based upon the market value of the damage parcel before the taking less the value of the remainder after the taking, including such damages resulting to the residue sustained by reason of the use, permanent in character, to which in this instance the portion taken had been put. (*Matter of City of New York* [*Rockaway Beach*], *supra; Matter of City of New York* [*West 10th Street*], 267 N. Y. 212, 222, 223.)

With regard to the claim for the wharf and terrace structure and Damage Parcel 55, the finding of the court should not be disturbed.

As the appellant, One Beekman Place, Inc., has stipulated to withdraw its appeal, the order to be entered herein should so provide. The decree so far as appealed from with relation to

awards for consequential damages should be reversed and the matter remitted to the court at Special Term with directions, (1) to take proof and award fair and reasonable consequential damages for Damage Parcels 54 and 56; and (2) to take proof, reconsider and increase the award for consequential damage for Damage Parcel 64-A so that the same shall be fair, reasonable and adequate.

UNTERMYER, COHN and CALLAHAN, JJ., concur; MARTIN, P. J., dissents and votes to affirm.

Decree, so far as appealed from with relation to awards for consequential damages, reversed and the matter remitted to the court at Special Term with directions, (1) to take proof and award fair and reasonable consequential damages for Damage Parcels 54 and 56; and (2) to take proof, reconsider and increase the award for consequential damage for Damage Parcel 64-A so that the same shall be fair, reasonable and adequate.

Settle order on notice.