J. Vincent Keogh, J.
The fee owner and the lessee have both filed objections to the award of $26,575 for damage parcel 7 as contained and set forth in the second partial and separate tentative decree made by this court on March 26, 1958.
The hearing on such objections began on September 22, 1958 and was concluded on October 3, 1958.
This proceeding involves the acquisition by the City of New York on June 11, 1956 of property required for a public parking field in the Port Richmond area of Staten Island.
The court has on several occasions viewed the premises, of which damage parcel 7 formed a part, both before and after the parking field was created and improved and is familiar with the physicial conditions of the property.
At the time of title vesting, Ruth Leo was the owner of a parcel of land containing 12,383 square feet, with a frontage of 38.70 feet on Richmond Avenue and a frontage of 13.37 feet on Grove Avenue. Pacing Richmond Avenue was a two-story brick building containing two stores and with a rear storage warehouse on the ground floor and with offices on the second floor. This improvement covered the entire remaining area of 7,788 square feet. With the exception of an overhanging vent pipe attached to its exterior wall, no part of the structure was physically appropriated by the city.
Damage parcel 7 consisted of 4,595 square feet. It was an irregular “ L ” shaped plot improved with a loading platform *917 adjacent to the warehouse, a concrete block retaining Avail, a buried oil fuel tank and an oil vent. It fronted on Grove Avenue and Avas used as a parking lot by the occupants of the offices and the customers for the stores in the building. It also served as a means of access to and egress from the building and the warehouse for persons and vehicles.
The entire premises had been leased on August 27, 1951 for a period of 58 years commencing on October 1, 1951 and terminating on September 30, 2009.
The OAvner in this proceeding is seeking to recover an award of $67,629.29 as just compensation for (1) the direct appropriation of the land and improvements located on damage parcel 7; (2) consequential and severance damages to the remaining land and building and (3) the cost of partial reconstruction.
The tenant is asking the court to fix an aAvard of $119,565 representing the loss to it of the parking facilities, the increased cost to it of garbage and refuse collections, the partial deprivation of the storage warehouse and use of the elevator, the expenses it has incurred and Avill in the future incur to reconstruct the building to comply with the provisions of the Administrative Code of the City of New York, and the diminution of rentable space and reduction of the rental value of the premises.
The City of New York has submitted expert testimony to the effect that the entire damages sustained as a result of its taking amounted to $23,870.
Fundamentally, the issue before the court is the establishment of an award which will constitute the difference between the full market value of the whole property, considering it in its condition and situation at the time of vesting (Boston Chamber of Commerce v. Boston, 217 U. S. 189) and the full market value of the remainder after such vesting (Matter of City of New York [Fourth Ave.], 255 N. Y. 25, 29). In a partial taking, such as this, our courts have held that the true measure of damages is the market value of the entire tract and improvements before the taking, less the market value of the remainder after the taking, including such damages resulting to the residue as is sustained by reason of the use permanent in character, to which the portion of the land taken is being put to by the acquiring agency (Matter of City of New York [Rockaway Beach], 288 N. Y. 75; Matter of City of New York [East River Drive], 264 App. Div. 555, 560, 273 App. Div. 884, affd. 298 N. Y. 843).
*918 In considering the new use, benefits accruing to the remaining property after title vesting may be employed as an offset against any claim for consequential damages. In Matter of City of New York (Exterior St.) (285 N. Y. 455) the city, in constructing what is now known as Major Deegan Highway, extinguished the riparian rights which were appurtenant to the owners of various properties abutting upon Mott Haven Canal. After the vesting of title, the authorities caused the city’s map to be changed by substituting a street in place of the canal. In commenting on this change, the court said (p. 461): “It follows, we think, that in appraising the consequential damages which have resulted to the appellants’ properties, Special Term was not precluded by section 14 of the Condemnation Law from considering the benefits resulting to the appellants’ lands by reason of any public improvement which the record may show has been legally authorized.”
It is the claimant’s theory that on June 11, 1956, the taking deprived the remaining property of secondary means of egress necessitating extensive structure alterations and reconstruction.
The claimant’s engineer in relying on sections C26-294.0 (subd. d), C26-273.0 (subd. b, pars. 2, 3, cl. [a]) and C26-284.0 of the Administrative Code submitted a plan of reconstruction and estimated the cost of carrying it into effect. The quoted sections provide that every building with a ground floor area exceeding 2,500 square feet shall have at least two means of egress with doors opening outward projecting not more than 18 inches. The provision with reference to exits from a vestibule to “ the street, yard or court ” (§ C26-294.0, subd. d) has reference to fire towers and is inapplicable to the present situation.
The testimony adduced by the city conclusively shows that the City Planning Commission and the Board of Estimate, after the institution of this proceeding, caused the city’s map to be changed so as to provide for a four-foot “ Public Walk for Pedestrian Use Only” running along the southerly side of the building and thence to Grove Avenue. A cyclone fence separated the walk from the parking field proper. At the court’s suggestion, the record discloses that the Department of Traffic, under whose jurisdiction the field is being maintained and operated, created two openings in the fence thus permitting uninterrupted access to and from the premises. In addition, part of the cyclone fence was removed directly in front of and adjacent to the rear storage warehouse. The acting Chief Engineer of the Building Department testified that this substi *919 tute means was acceptable to the department and that no alterations to the building were required.
The practical construction placed upon the code provisions by the department is entitled to great weight in their interpretation (Grimmer v. Tenement House Dept., 204 N. Y. 370, 380). Basically, the provisions are intended as a safeguard for the occupants of the building in the event of fire. The creation of the walk providing direct access to Grove Avenue and the openings in the cyclone fence onto the parking field assure these occupants of easy egress to open spaces within the contemplated meaning of the code.
The court is of the opinion that the proposed reconstruction plan of the claimant’s engineer altering the building so as to provide substitute secondary means of egress is unnecessary. It finds, however, that the recession and rehanging of the exit doors and the moving of the stairs into a new vestibule are feasible and proper.
After carefully reviewing the testimony, studying the exhibits received in evidence and with the knowledge obtained from the statutory views, both before and after the creating of the parking field, the court finds that the market value of the entire property on June 11, 1956 was land $85,755, improvements $120,000 or a total before value of $205,755. The court finds that the market value of the property after the taking was land $67,480, improvements, before reconstruction, $97,525 or a total after value of $165,005 (Matter of Port of New York Auth. [Lincoln Tunnel], 1 A D 2d 801). The difference of $40,750 constitutes the full measure of compensation which the city is directed to pay.
This new award includes direct and consequential damages to both the land and improvements taken and to the remaining property.
There remains for consideration the claim for leasehold damages asserted by the tenant. Any award for such damages is to be deducted from and carved out of the increased award of $40,750 (Matter of City of New York [Delancey St.], 120 App. Div. 700, 705).
The undisputed testimony discloses that there has been no abatement or reduction of rent paid by the dominant lessee and the sublessees. The record indicates that there has been no diminution of rental space, except for a small area in the basement in which the oil tanks have been relocated. The proposed alteration will not materially affect any appreciable rentable area.
*920 Under the terms of the lease the tenant is obligated at its own expense to make all repairs and alterations, both structural or otherwise, on the inside or outside of the building. The rent reserved to the landlord is a net rental, the tenant paying all taxes and maintenance charges. The tenant is, under paragraph “34”, afforded an option of canceling the lease in the event of condemnation of a substantial part of the demised premises. It has, however, not exercised such option and the lease, at present, is in full force and effect.
At the close of the case, counsel for the fee owner, recognizing that the leasehold has been impaired by this taking, moved that a part.of the award reflecting the tenant’s damages be made by the court. The court accordingly finds that the damage to the lessee is the sum of $22,475.
The Corporation Counsel is directed to prepare and submit the second partial and separate final decree in accordance with this decision.