GLEN & MOHAWK MILK ASSOCIATION, INC., Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 31877.)

Court of Claims, July 6, 1955.

*Eugene P. Devine, Prescott C. Sook* and *Joseph Neumann* for claimant.

*Nathaniel L. Goldstein, Attorney-General (James G. Austin* of counsel), for defendant.

LOUNSBERRY, P. J. This is a claim for the appropriation of a country milk receiving and processing plant located at Fultonville, N. Y., pursuant to article 12-A of the Highway Law and article 2 of the Public Authorities Law. The appropriation was made on April 2, 1952.

The property appropriated consisted of 2.110 acres of land on which were located four connecting buildings containing approximately 23,000 square feet of floor space. The land had a frontage on the main street in Fultonville of 263 feet, and also fronted on the Mohawk River, which, at this point, is a part of the Barge Canal system. The plant was especially built and completely equipped to handle and pasteurize fluid milk and cream as well as the manufacture of powdered milk, condensed milk, ice cream mix and canned cream. Water, which is a necessary requirement in the operation of a plant of this character, was supplied by two driven wells and a pipe line with pump to the Mohawk River providing a water supply of approximately 690 gallons per minute. There was a railroad siding on the premises 680 feet in length, the construction of which required approximately 16,000 cubic yards of fill. Coal was supplied by a drop coalpit near the railroad siding. Heat and steam, a necessary adjunct to a manufacturing plant of this character, was supplied by three large boilers. The milk plant was fully equipped with modern machinery and equipment which, two months after the appropriation, was inspected by a representative of the New York City Health Department and met the strict requirements of that city. The maximum capacity was 30,000 gallons of milk per day.

The buildings on this property were especially built and equipped for the receiving and processing of milk, and constituted an " adjusted, synchronized and perfected " unit. The claimant contends the value of the land, buildings, equipment and appurtenances is $565,396.91. The State argues that the fair market value of the entire property including land, buildings and equipment does not exceed the sum of $135,000.

Claimant is entitled to a fair and reasonable compensation for the land, buildings and fixtures. The State also argues that much of the equipment is personal property and that the claimant is not entitled to compensation for such property. " We think that the power of the State is not so great, nor the plight of the citizen so helpless. Condemnation is an enforced sale, and the State stands toward the owner as buyer toward seller. On that basis the rights and duties of each must be determined. It is intolerable that the State, after condemning a factory or warehouse, should surrender to the owner a stock of second-hand machinery and in so doing discharge the full measure of its duty. Severed from the building, such machinery commands only the prices of second-hand articles; attached to a going plant, it may produce an enhancement of value as great as it did when new. The law gives no sanction to so obvious an injustice as would result if the owner were held to forfeit all these elements of value. An appropriation of land, unless qualified when made, is an appropriation of all that is annexed to the land, whether classified as buildings or as fixtures, and so it has frequently been held." (*Jackson* v. *State of New York,* 213 N. Y. 34, 35–36.)

Unquestionably a considerable portion of the machinery and equipment was removable and was not included in the appropriation. However, we are of the opinion that the claimant is entitled to recover the difference between the value of the machinery and equipment, excluded from the appropriation, if removed, and the value which such machinery and equipment added to the real property when used in connection therewith as a " going concern " in full operation. This machinery and equipment obviously enhanced the value of the real property and permanent fixtures attached thereto. (*Banner Milling Co.* v. *State of New York,* 240 N. Y. 533.)

As an example, the pasteurizing vacuum pump and pans had a replacement value of $35,000, but if removed from the plant they would be worth only what they would bring for junk copper because, under the rules and regulations of the New York City Department of Health, copper equipment is no longer permitted. However, the claimant would not be required to replace them

with stainless steel so long as they functioned properly. Therefore, this piece of equipment was worth very considerably more when used in this particular plant than it would be if removed and sold for junk.

The claimant in its appraisal has included contractors' job overhead, contractors' profit, architects' and engineers' fees and construction financing interest as part of the cost of reconstruction. These items considered by themselves or the total thereof cannot be added to the total of the claimant's compensation but must be taken into consideration along with other items in arriving at the market value of the property, which we have done. '' In establishing the value of the flour mill property appropriated, it was competent to prove all the uses that could be made of the property; the value of the plant as a live, going flour mill, the increased value, if any, which the structure so used had given to the land, and all the valuable appurtenances and availabilities of the property. To estimate the fair market value the court no doubt should have considered not only the cost of production, but also the cost necessarily or reasonably expended in bringing the mill or factory into efficient working condition, what has been called the synchronizing of its parts. Architect's fees in making or revising plans, compensation for engineers to carry out the plans or to arrange the factory so as to produce appropriate manufacturing results are all elements which should be considered in estimating the market value. These are things which a seller and a purchaser would consider on a sale.'' (*Banner Milling Co.* v. *State of New York, supra,* p. 543.)

We find, because of the appropriation, the claimant has been damaged as follows:

The appropriation of 2.110 acres of land and the buildings thereon ...........................$103,075.05

Railroad siding, water wells, pipe line to the Mohawk River, pumping plant, sewer, coalpit, plumbing, electrical wiring, old and new boilers, condensing equipment, elevators, tanks, conveyor and water tank ............................. 97,000.00

The difference between the value of the removable machinery and equipment not appropriated and the value added to the plant when they were used with it as a '' going concern ''................. 112,015.65

The State of New York filed a counterclaim in this action claiming the claimant is indebted to it in the sum of $11,200, pursuant to an agreement entered into by the parties whereby

the claimant agreed to pay to the State of New York the sum of $800 per month rental for the use and occupancy of the appropriated premises from May 1, 1952, until vacated by the claimant. The premises were vacated on July 1, 1953, after an occupancy of fourteen months.

We find that the agreement entered into between the parties, dated July 14, 1952, was a good and valid lease and that the claimant is indebted to the State of New York in the sum of $11,200 which sum is deducted from the damages awarded herein. The net award, therefore, is the sum of $300,890.70 with interest thereon from April 2, 1952, to October 2, 1952, and from May 6, 1953, to the date of entry of judgment.

The court has viewed the premises.

Let judgment be entered accordingly.