Richard S. Heller, J.
This claim is based upon the appropriation of a milk and dairy products processing plant owned by the claimant, pursuant to sections 30 and 349-c of the Highway Law. The property was appropriated in fee and was described and designated as Parcel No. 1 on Map No. 1 of City of Albany, Mall-Arterial Highway. The court adopts as accurate the description of the appropriated parcel of land as shown on the official map filed in the office of the Clerk of Albany County.
The claimant was the corporate successor to a dairy business which had been founded in 1907, and claimant’s shareholders consisted of the descendants and the heirs and distributees of Charles Phelps Stevens, the founder and original owner of the business. Prior to August, 1964, title to the land, buildings and all the machinery and equipment was held by claimant’s shareholders and leased to the claimant. In 1964, the shareholders conveyed all of the property to the claimant corporation in exchange for a given amount of its preferred stock. The State’s attorneys and appraisers made much of the lease and stated consideration for the transfer. Since, however, it was clear that these were not arm’s length transactions, the court has given them little or no weight in arriving at its determinations with respect to damages and has marked the State’s proposed findings accordingly.
Claimant’s property was situated in the center of the City of Albany, two blocks south of State Street, just across South Swan Street from and on the western fringe of the new South Mall. The Mall, a 98-acre area running south from the State Capitol Building, had been acquired by the State in 1962 and *580 was being developed as a site for various State office buildings. All of the appraisers agreed that real property values in the vicinity of the Mall had increased tremendously and would continue to increase in the foreseeable future by reason of its development.
With respect to the claimant’s property, it is clear that the various buildings and the fixtures contained in them constituted a fully integrated and functioning entity. The appraisers conceded the lack of comparable sales or other relevant market data, and as in Glen & Mohawk Milk Assn. v. State of New York (207 Misc. 1130, affid. 2 A D 2d 95), there is no question but what the property was a “.specialty.”
Although appraisals of “ specialties ” or special use properties usually involve estimates of cost less depreciation with respect to improvements and a separate evaluation of the land on a market data approach, the present case presents certain problems which have seldom been dealt with or thoroughly analyzed in reported decisions. The proof conclusively established that the real estate in conjunction with the business conducted upon it produced an unusually high profit for the claimant corporation and its shareholders. On the other hand, it was also clear that the land, if vacant, would be very valuable for high density commercial development which would, of course, have been inconsistent with the existing use.
The State, pointing to this inconsistency and citing cases such as Matter of City of New York (Coogan) (26 A D 2d 372) and Salzberg v. State of New York (24 A D 2d 664), argues that if the buildings are appraised as a “ specialty,” the value of the. land for an inconsistent use must be disregarded. The claimant, on the other hand, argues that this inconsistency is unimportant and that the appropriate measure of damages- consists of the sum of the value of the land, as if vacant, and the reproduction cost less depreciation of the buildings, fixtures and equipment less an allowance for salvage value. The court is unable to assent to either argument.
In one of the most authoritative treatises dealing with valuation problems in eminent domain cases, the general issues involved herein have been outlined as follows: 1 ‘ Although it is now the accepted doctrine that reproduction cost is admissible when the structures are adapted to the land, the question remains, what is meant by adaptability? In clear-cut cases, the problem is not difficult. On the one hand, if the structure is modern and is of such a type that an owner of the land might plausibly wish to replace it with a substantially identical substitute in case it were destroyed,, reproduction cost is certainly *581 admissible under the prevailing doctrine. On the other hand, if the structure is antiquated or so clearly ill-adapted to its locality that its demolition within a short time .seems to be called for, evidence of so-called structural value will be excluded.” (2 Orgel, Valuation under Eminent Domain [2d ed., 1953], § 191, P- 17.)
The uncontroverted fact that claimant’s profits were substantial as well as substantially above the norm for dairy businesses would tend to support the conclusion that the structural improvements were well-adapted to the site, and it is clear that income or profits produced in a “ specialty ” operation are relevant on that particular issue. (People ex rel. Hotel Paramount Corp. v. Chambers, 298 N. Y. 372, 375.) In addition, the fact that such of the State’s experts, who appeared to know what they were talking about, conceded that the plant was relatively efficient renders the State’s extremely high figures for functional and economic depreciation and obsolescence unacceptable.
On the minus side insofar as the claimant is concerned, it must be noted that the age and nature of the buildings, the obvious presence of nonproductive space, and certain inefficiencies common where structures have been “ forced ” or adapted to a use other than that for which they were designed and intended cannot be overlooked. Such considerations would render the likelihood of reconstruction of identical structures or facilities so remote as to be nonexistent. These factors, however, are always present where the efficiency of a business operation is continually being affected by technological developments as well as general economic trends.
In the present ease, replacement of the processing plant was not only reasonable but certain from a commercial and economic standpoint, and to conclude that the improvements were almost entirely obsolete and that demolition was imminent and inevitable, as urged by the State, would be absurd. Cases involving long vacant power plants (Salzberg v. State of New York, 24 A D 2d 664, supra), a major league stadium without a major league team (Matter of City of New York [Coogan], 26 A D 2d 372, supra), and other specialty assets constructed for use in unprofitable or defunct specialty operations hardly lend support to the State’s position in this case.
For the foregoing reasons, the court has determined that reproduction cost less depreciation is the most reasonable and, in fact, the only available basis for determining the going concern value of claimant’s land improvements. Allowance has been made for physical depreciation and for such functional and economic depreciation and obsolescence as the proof demanded. *582 Although claimant’s business could be categorized as very successful, the court has given due consideration to the obvious importance of skilled management and good will which, of course, were not affected by the appropriation of claimant’s property.
The State, in essence, requests a finding that the claimant would have been forced to vacate its buildings and move its operation within a very short time by a combination of governmental restrictions and economic factors. A similar argument has recently been summarily rejected as calling for an undue amount of speculation (Bridges v. Alaska Housing Auth. [Alaska], 375 p. 2d 696), and many of the State’s prophesies could be so characterized. The changing character of the area in which claimant’s property was located, however, was obviously relevant and has been considered in the assessment of damages herein.
With respect to the value of the claimant’s land, the court could not accept its counsel’s assertion that the award must be based upon the simple sum of the value of the land and buildings as separately appraised. Although some apparent support for this proposition can be found in certain of the decisions cited by counsel and in Matter of City of New York (North Riv. Water Front) (219 App. Div. 27), the present factual situation is vastly different from those in the cases cited. Sounder authorities hold such an approach to be improper. (Matter of City of New York [Park Row Slum Clearance], 17 A D 2d 534, 540.) On the other hand, the State’s proposed use of industrial property values is unrealistic. The court’s award for claimant’s land as specified below is based upon a determination that it would be ridiculous from a commercial or investment standpoint for the claimant to have demolished productive business assets until such time as depreciation and obsolescence and other factors, such as real property taxes and various municipal restrictions, rendered abandonment reasonable. In the present case, even the State’s appraiser believed that real property values in the area would continue to increase and this factor is believed to give strong support to the court’s conclusion.
Although the respective amounts ascribed to the land and improvements are separately stated, the court has correlated its discount for depreciation of the improvements with its discount from the present value of the land as if it were vacant, insofar as it is possible to do so. The depreciation figures for the separate categories of improvements have also been correlated to reflect the fact that the useful lives of the various component improvements were obviously interdependent (see Matter of City of New York [Maxwell], 15 A D 2d 153,175). The fact *583 that brick or stone buildings may last for extremely long periods of time is not determinative of their useful life for a particular business operation.
Subsequent to the trial, the parties stipulated that the fair and reasonable salvage value of removable machinery and equipment subsequent to the appropriation was $75,000 and that this amount should be credited against any award made by this court for the going concern or in place value of claimant’s machinery, fixtures, and processing equipment.
The court has determined in accordance with the foregoing principles that the claimant’s damages as a result of the appropriation are as follows:

The claimant is, therefore, entitled to a net award in the amount of $1,163,000, with interest from September 29, 1965 to the date of entry of judgment herein.