Howard T. Hogan, J.
In this eminent domain proceeding’ the court, having decided upon all but one of claimant’s filed objections to the tentative decree entered herein, gave both claimant and petitioner the opportunity to present further testimony and evidence relating to the income method of valuation and to commercial land value. A portion of the court’s decision dated June 11, 1971, relating to the hearing on objections, bears repeating: 11 The question of economic valuation is exceedingly important and goes to the root of highest and best use. If the *1066 land value for residential usage exceeds the value of land and buildings in the market place, then the court must re-examine its findings of highest and best use.
“ The Court will afford both sides the opportunity to submit testimony and evidence on this point as well as evidence, if possible, on the commercial land value illustrated by comparable sales.”
Despite the opportunity given them, neither the claimant nor the petitioner has produced any new evidence for the court. They have merely presented additional argument. The claimant has attempted to further justify and buttress the method of valuation adopted by its appraiser, namely the cost or summation approach, by attempting to prove that the subject property (a beach and cabana club) is a specialty. The petitioner argues that while the subject is not a specialty, it has certain attributes of a specialty but because of lack of market data and valid income information the only available approach to valuation was the cost or summation method.
The court agrees that the subject property is a special use property and does have some attributes of a specialty. However, it finds that it is not a specialty as that term has been defined. This finding does not, however, simplify the valuation problem presented in this case, especially in view of the reliance by both sides on a method of valuation appropriate to specialties. We are constrained, therefore, to explore more fully this subject of specialty valuation generally and particularly in the light of the special facts and circumstances herein and of the theories propounded by the claimant’s counsel.
A careful review of the authorities leads this court to the conclusion that the term ‘1 specialty ’ ’ applies to buildings and improvements only. We find that there are several tests, all of which must be met, for an improvement to be considered a specialty. It must be unique; there must be no market for it and no sales; it must be specially built for the specific purpose for which it is designed; it must have a special use for that purpose and must be so specially used. Implicit also in applying these tests is the fact that the improvement was an appropriate improvement at the time of taking and its use is economically feasible and is reasonably expected to be reproduced or replaced. If all of these elements are present, justification exists for determining market value by the cost or summation approach. Special use connotes a lack of comparables or other relevant market data.
While it is true that the subject property was unique and was designed and specially built for its specific use as a beach *1067 and cabana club and was so used, the evidence demonstrates that there was a market for it as well as comparable sales, albeit for other purposes. This fact would seem to indicate that it had outlived its usefulness as a beach club and that the highest and best use for the subject was something else. The evidence also demonstrates a poor financial picture which would belie the fact that it was an economically feasible improvement. Under these circumstances we cannot say with any degree of reasonable certainty that it would be reproduced or replaced. It is, therefore, not a specialty in the true sense of that term.
Nevertheless, the testimony and the evidence before the court support a finding that its use as a beach and cabana club is the highest and best use. Since both the claimant and the petitioner valued the subject as if it were a specialty, the court gave them an opportunity to present income approaches to value when the occasion arose herein in connection with the hearing on objections. Not having done so, the parties have abrogated their responsibility and the court will not and cannot substitute its appraisal judgment for theirsi
This does not mean, however, that the court cannot determine market value from the record before it. The subject property is concededly a special use property and has many of the attributes of a specialty. Since there are no valid market data for beach clubs per se, the court is of the opinion that the method chosen by both parties will lead to a determination of just compensation. We find that our approach is within the rationale stated by the Court of Appeals in Matter of Port Auth. Trans-Hudson Corp. (Hudson Rapid Tubes Corp.) (20 N Y 2d 457, 468) : “ neither this court nor the Supreme Court of the United States has ever attempted ‘ to prescribe a rigid rule for determining what is “just compensation” under all circumstances and in all cases. Fair market value has normally been accepted as a just standard. But when the market value has been too difficult to find, or when its application would result in manifest injustice to otoner or public, courts have fashioned and applied other standards.’ (United States v. Commodities Corp., 339 U. S. 121, 123 [emphasis added]; United States v. Virginia Elec. Co., 365 U. S. 624.) ”
It is incumbent upon the court, therefore, to consider the uniqueness of the subject as well as its poor financial picture in any application of the cost or summation approach to value.
Claimant’s counsel contends that valuation under this method requires the separate valuation of land and buildings. He further urges that the basis of valuation of the land should be its cost. These arguments are made because there is no apparent *1068 dispute over the value of the buildings and improvements as found by the court. Claimant contends that the lowest valuation in the record for land commercially zoned and used is $45,000 per acre and since we found a value of $37,000 per acre, we must increase our award by $8,000 per acre for each acre taken. Petitioner argues that the subject must be valued as a package and if the court increases its land award, the award for the buildings must be correspondingly decreased to reflect the economic obsolescence which afflicts these beach clubs. The record demonstrates that the figure of $45,000 per acre reflects petitioner’s expert’s opinion concerning the value of business land, vacant and ready for development. It was his opinion however that land used for beach and cabana club purposes was worth $30,000 per acre. The court’s finding of $37,000' per acre for the subject land was based upon an analysis of the only sale which was of substantial significance as an indicator of value and which was used by the court to determine the value of beach club land. This finding is within the range of the evidence presented.
The authorities do not support either of the basic contentions made by the claimant. The court cannot separately value the land and the buildings and add the two together without losing sight of the market value of this package for its highest and best use. Neither can the court award $45,000 per acre which is the petitioner’s opinion of the value of vacant business land. To do so would be to make an award on the basis of cost or replacement value for land. Cost is not equivalent to market value and it is improper to aggregate the cost of land with the structural value of improvements (Bensle v. State of New York, 24 A D 2d 1052; Tilo Co. v. State of New York, 25 A D 2d 795; Bond v. State of New York, 24 A D 2d 778; Norman’s Kill Farm Dairy Co. v. State of New York, 53 Misc 2d 578; Matter of City of New York [Park Row Slum Clearance], 17 A D 2d 534, 540, concurring opinion of Mr. Justice Eager) . The measure of damages is the market value of the land with its improvements, provided they enhance the value of the land (Matter of City of New York [Blackwell’s Is. Bridge], 198 N. Y. 84). Evidence of the structural value of the improvements is used only to determine the extent to which the land is enhanced or depreciated in value.
It is also well settled that, in using the cost or summation approach, the land must be valued in a use consistent with the use of the improvements (Acme Theatres v. State of New York, 26 N Y 2d 385). To value the subject land as if it were vacant business land ready for commercial development would be incon *1069 sistent with its beach club use, the highest and best use as found by the court. The claimant argues, however, that its position is supported by the Polo Grounds case (Matter of City of New York [Googan], N. Y. L. J., Nov. 25, 1964, p. 16, col. 1, mod. 26 A D 2d 372, mod. 20 N Y 2d 618). Claimant’s counsel contends that Polo Grounds is authority for the proposition that land may be separately valued on the basis of uses inconsistent with the highest and best use of the property as a whole; or more simply stated, claimant is entitled to the replacement cost of the land taken from him. After careful analysis, this court is of the opinion that claimant’s interpretation of the Polo Grounds decision cannot be sustained.
Having rejected the fee owners’ opinion of highest and best use for multiple family dwellings and the city’s opinion of highest and best use for industrial development, Special Term (supra) found the highest and best use to be stadium use and adopted a summation method of appraisal of the Polo Q-rounds as a specialty. The court gave an award of the sound value of the improvements. However, the land value appears not to have been based upon stadium use estimated by the claimant-tenant at $5.28 per square foot. The fee owner estimated the land value to be $7 per square foot for high-rise apartment development, and the city’s expert found $2.64 per square foot based upon industrial use, though he did testify that for stadium use his land value would be lower. There was no evidence of land value for stadium use other than tenants’ expert’s opinion. The court nevertheless awarded $3.50 per square foot. The claimant herein, would have us infer from this award, that the court made an award for land based upon a use inconsistent with the highest and best use of the property.
The Appellate Division (26 A D 2d 372) found that the highest and best use was the existing use but reduced the value of the stadium and affirmed the land value. The Court of Appeals (20 N Y 2d 618) restored the value of the stadium to Special Term’s finding and once again affirmed the land value. The dissent in both appellate courts, as to land value, pointed out that the only evidence in the record of land value for stadium purposes was $5.28 per square foot and the court’s finding of $3.50 was substantially below this figure. Perhaps the trial court, having adopted the tenants’ unchallenged appraisal of reproduction cost of the stadium and its highest and best use for stadium purposes, could and would have adopted his quantum of land value if he thought it also was fair. It is apparent that he did not, perhaps because the land sales offered were not comparable. (None of the tenants’ sales were of land that had *1070 been or could be used for major league baseball activity. For example, one sale in the Bronx was for a gas station site.)
That the trial court as well as the appellate courts felt that the land had been valued on a basis consistent with its use as stadium land is best pointed out by the following language of the Court of Appeals:
“ Because one witness called by a party who has only a tangential concern with the land value expressed the view that the best use of the land was for a stadium, the court, able to reach the same conclusion from a record showing long past and continued contemporaneous utilization of the land for just that use, was not on this record bound to say that the witness was just exactly right in his view that $5.28 per square foot was its value.
“Nor is the ultimate judgment of the Supreme Court expressed at Appellate Division in respect of the $3.50' per square foot value either arbitrary or ill-founded. The Appellate Division’s acceptance of the Special Term’s value is logically developed in the court’s opinion in a demonstration of the inherent weaknesses of the $5.28 value in the light of the actual economic experience with the property. That this value was ‘ grossly exaggerated, ’ the opinion notes, ‘ is virtually compelled by the facts.’ ” (Matter of City of New York [Coogan], 20 N Y 2d 618, 625.)
It seems obvious that what a purchaser would pay for land is vitally affected by the potential return on his investment, which in turn is dependent upon the use to which it is put. And in condemnation the basis upon which property is to be valued is the highest and best use of the property. (Sparkhill Realty Corp. v. State of New York, 254 App. Div. 78, affd. 279 N. Y. 656.)
Accordingly, the court adheres to its original finding of land value. The County Attorney is instructed to prepare a supplemental tentative decree based upon the decision of this court dated June 11,1971.